Ruth GILCHRIST, Plaintiff-Appellant,
Cross-Appellee,

v.

William BOLGER, Postmaster General,
United States Postal Service, Defend-
ant-Appellee, Cross-Appellant.

No. 83–8252.

United States Court of Appeals,
Eleventh Circuit.

June 11, 1984.

See also, D.C., 89 F.R.D. 402.

John H. Ruffin, Jr., Augusta, Ga., for plaintiff-appellant, cross-appellee.

Edmund A. Booth, Jr., Asst. U.S. Atty., Augusta, Ga., Karen A. Intrater, David G. Karro, Stephen E. Alpern, U.S. Postal Service, Washington, D.C., for defendant-appellee, cross-appellant.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and THORNBERRY *, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Appellant Ruth Gilchrist filed suit against William Bolger, Postmaster General, under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e–2000e–17, alleging individual and class-wide race and sex discrimination at the United States Post Office in Augusta, Georgia. After a bench trial, the district court entered judgment for defendant. Gilchrist appeals, contending that the court erred in denying her motion for class certification and in determining that she was not denied promotions for discriminatory reasons. Bolger filed a cross-appeal, asserting that the trial court's unexplained decision to deny his costs was an abuse of discretion. We affirm the judgment and denial of class certification but vacate and remand the determination of costs.

## I. INDIVIDUAL CLAIMS

Gilchrist, an employee of the Augusta Post Office, applied for promotion to the position of Mail Requirements Clerk (MRC) in October, 1977. The local postmaster instead chose a white male employee although he testified that Gilchrist was qualified. In February, 1978, Gilchrist sought promotion to the position of Customer Service Representative (CSR), but the postmaster selected a white male employee although Gilchrist was again qualified for the CSR position. The district court held that plaintiff's evidence established a prima facie case of employment discrimination un-

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

tion.

der the standards described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The defendant sought to articulate legitimate, non-discriminatory reasons for denying the promotions. The evidence indicated that Gilchrist had a poor attendance record compared to the other applicants for promotion. The postmaster who made the decisions on Gilchrist's applications testified that Gilchrist's attendance problems made her unreliable. He stated that, for both the MRC and CSR position, it was necessary to have someone who would be regular and reliable in their attendance. The man drawn for the MRC position was selected because of his greater knowledge of postal requirements and because of Gilchrist's attendance problems. As to the CSR position, the postmaster explained that Gilchrist was not selected because of her attendance problem and because he was concerned with her ability to represent the Postal Service.

The district court concluded, after considering the evidence at trial and the findings of a complaints examiner who heard Gilchrist's administrative complaint and found there was no discrimination, that the reasons articulated by the defendant for the denial of promotion, principally a demonstrated lack of reliability on the part of plaintiff, were legitimate, nondiscriminatory reasons. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–1095, 67 L.Ed.2d 207 (1981). The court also found that Gilchrist did not show that defendant's proffered explanation for the denial of promotion was a pretext. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Accordingly, the court ruled that Gilchrist had failed to prove intentional discrimination.

Gilchrist contends that the court's finding was flawed for a number of reasons. First, she alleges that sick leave used by an employee and approved by an employer should not be used to deny the employee promotional opportunities. While Gilchrist used almost all of her available sick leave, the leave was approved for pay purposes. A post office supervisor testified that even if leave is approved for pay purposes, the taking of leave at an excessive rate is considered bad attendance. Gilchrist acknowledged that she had been disciplined repeatedly for using excessive sick leave and, according to one witness, she even admitted to the promotion board that she had abused sick leave. More important for purposes of this disparate treatment case, Gilchrist admitted that the Augusta Post Office had a policy of treating absence records like hers as an attendance problem and conceded that, as far as she knew, the Post Office applied that policy to everybody. Although Gilchrist did name one other female employee with similar attendance problems who was allegedly treated differently, the postmaster testified, without contradiction, that the other employee's attendance record had improved before she was promoted.

■ Title VII only proscribes employment discrimination on the basis of race, color, religion, sex, or national origin. *See Garcia v. Gloor,* 618 F.2d 264, 269 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). Provided the promotion decision was not based, as Gilchrist alleged, on race or sex, the Postal Service has not violated Title VII. In *Willingham v. Macon Telegraph Publishing Co.,* 507 F.2d 1084, 1091 (5th Cir.1975), the court explained,

> Equal employment *opportunity* may be secured only when employers are barred from discriminating against employees on the basis of immutable characteristics, such as race and national origin.... But a [promotion] policy that distinguishes on some other ground, such as grooming codes or length of hair, is related more closely to the employer's choice of how to run his business than to equality of employment opportunity.

Whether the policy of treating a high number of absences, although earned and approved, as an attendance problem is a good employment policy or a bad one or even a policy prohibited under other laws, Title VII does not prohibit employment decisions based on that policy provided the policy is applied equally to all employees. For in

enacting Title VII, "Congress sought only to give all persons equal access to the job market, not to limit an employer's right to exercise his informed judgment as to how to best run his shop." *Id.* at 1092.

Nothing in the record suggests that Gilchrist was treated differently than white or male employees at the Augusta Post Office or that her failure to be promoted was based on her race or sex. Thus, we cannot conclude that the district court was clearly erroneous, *see Canino v. United States EEOC,* 707 F.2d 468, 470 (11th Cir.1983), in holding that the defendant presented legitimate, nondiscriminatory reasons for denying Gilchrist a promotion.

██ Appellant also makes a number of challenges to the standards used by the district court in finding no discrimination. She asserts that the court was preoccupied with the allocation of respective burdens and misread the applicable standard for finding discrimination. However, the district court followed the law as set forth in *McDonnell Douglas Corp.,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Contrary to Gilchrist's contention, the court did not evade the ultimate question of intentional discrimination but simply found that Gilchrist's denial of promotion was due to factors other than her race or sex. Gilchrist also suggests that her evidence supported a disparate impact theory. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Gilchrist, however, did not provide any evidence showing that the neutral employment practice, the attendance policy, had a discriminatory impact on black or female employees. *See Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 619 (11th Cir.1983). Furthermore, while the number of black supervisors at the Augusta Post Office was shown to be small, Gilchrist failed to show the number of black applicants for supervisory positions. Therefore, she introduced no evidence that

would have allowed the district court to determine the number of blacks in the pool from which supervisors were hired.

██ Gilchrist also maintains that because she presented direct evidence of discrimination, the court should have analyzed the evidence under the standard enunciated in *Mount Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *See Lee v. Russell County Board of Education,* 684 F.2d 769, 773–74 (11th Cir.1982). Gilchrist's prima facie case, however, did not consist of direct evidence that the defendant acted with discriminatory motivation but was based entirely on circumstantial evidence. Therefore, the court did not err in relying on the *McDonnell Douglas* form of rebuttal. *See id.* And finally, the district court was not clearly erroneous in finding that the isolated and particular complaints of other postal employees did not show a pattern and practice of discrimination. Without proof of an immediate past history of discrimination, the rebuttal burden on the defendant is the preponderance of the evidence, not clear and convincing evidence. *See Lee v. Washington County Board of Education,* 625 F.2d 1235, 1237 (5th Cir.1980).[1]

## II. CLASS CERTIFICATION

In her complaint, Gilchrist alleged classwide employment discrimination at the Augusta Post Office against "blacks and other minorities." She later moved for class certification on behalf of all past and future applicants and present employees at the Augusta Post Office who have been, are being, or will be exposed to racial discrimination. The district court, after considering the requirements of numerosity, commonality, typicality, and adequacy of representation in Fed.R.Civ.P. 23(a), denied the motion for class certification. *See Gilchrist v. Bolger,* 89 F.R.D. 402 (S.D.Ga. 1981). The court held that Gilchrist had failed to show questions of fact common to those of applicants for jobs at the Augusta

---

1. Gilchrist went to great lengths to point out the shortcomings of the Augusta Post Office's affirmative action plan and its director but did not offer any evidence to show that the program was executed in a discriminatory manner. As

we recently held in *Ferguson v. Veterans Administration,* 723 F.2d 871, 872 (11th Cir.1984), "absent a showing of discrimination, there is no Title VII cause of action for the failure to implement or utilize an affirmative action program."

Post Office and excluded applicants from any potential class. It also found that Gilchrist, as a nonsupervisory employee, could not adequately represent a purported class consisting of supervisory employees. In addition, Gilchrist asserted that the number of members of the proposed class was in excess of forty. However, after excluding applicants, supervisors, and those class members whose claims fell outside the applicable statute of limitations, the court found a potential class of twenty-one to twenty-four members. The district court concluded that, since the post office would have records stating the identity and addresses of these individuals, the number of putative class members was not so large as to make joinder impractical. Therefore, it refused to certify the class.

During trial, the court permitted Gilchrist to make an additional offer of proof in support of class certification as a precaution to give maximum protection to any deserving putative class members. In her offer of proof, Gilchrist alleged, "The class consists of all black employees of the Augusta Post Office, which number exceeds 100 blacks, who have common questions of law and fact." Yet in the next sentence, Gilchrist defined a different class: "The class consists of all those persons who have applied for work at the Post Office and who have not been hired because of race, color and sex."[2] After considering the offer of proof, the court held that there remained a lack of numerosity and definition in the class.

■ On appeal, Gilchrist asserts that the court erred in denying class certifica-

tion. She asserts that the alleged evidence of class-wide discrimination and the remedial purposes of Title VII qualified the suit for class certification. A Title VII class action, however, like any other class action, may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Fed.R.Civ.P. 23(a) have been satisfied. *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2373, 72 L.Ed.2d 740 (1982). In its initial denial of class certification, the district court carefully considered whether the purported class met the requirements of Rule 23(a). Absent an abuse of discretion, the court's denial of class certification will not be disturbed. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038–39 (5th Cir.1981). We find no abuse of discretion in the court's eliminating applicants and supervisors from the proposed class; *see Wells v. Ramsay, Scarlett & Co.*, 506 F.2d 436 (5th Cir.1975) (insufficient nexus between black foreman and class of black nonsupervisory longshoremen), or in its finding that Gilchrist made an insufficient showing of numerosity in her motion for class certification, *see Garcia v. Gloor*, 618 F.2d at 267 (class of 31 not so numerous that joinder impractical). *See generally Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir.1983) (rule permitting "across the board" attacks on discriminatory practices now defunct).

■ Gilchrist also contends that the offer of proof at trial showed that the size of the purported class was in excess of 100.[3] In support of this contention, she

---

**2.** It is unclear from the class definitions in the offer of proof whether the purported class consisted of just black employees or of the larger potential class of all those discriminated against on the basis of race, color and sex. It is equally unclear whether the class consisted of those persons who have not been hired, those who were denied promotions, or both.

**3.** Gilchrist argues that the district court erred in permitting Bolger to contest the offer of proof on class certification. At the beginning of the trial, the court informed Gilchrist that she could make an offer of proof with respect to the class certification issue. The court accepted Gilchrist's written offer of proof and asked defense

counsel to review the offer and inform the court if the defendant sought to controvert any of the allegations or statistics in the offer. Counsel for Gilchrist objected that the offer of proof should not be subject to adversarial scrutiny. The court responded that the offer would not be subject to adversarial scrutiny as the court was just seeking to determine any areas of dispute on the class claim. Defense counsel was then allowed to identify those parts of the offer of proof agreed to by defendant, and those which were controverted.

Appellant concedes that most of the offer of proof was not controverted but maintains that when a trial court permits a proffer, Fed.R.Evid. 103(a)(2) and 103(b) do not allow the court to

directs our attention to page 306 of the record on appeal. This page reveals statistics indicating 127 black employees within the Management Sectional Center of the United States Postal Service in Augusta, Georgia. Testimony at trial indicated that the Augusta Post Office, where Gilchrist is employed, is only 1 of 104 post office stations and branches within the Management Sectional Center. Gilchrist's suit only alleged discrimination at the Augusta Post Office; her class definition only referred to employees at the Augusta Post Office. Furthermore, she stated at trial that she was not concerned with the 104 post offices but only with the main post office in Augusta where she was employed. From the raw statistic of 127 black employees within the Management Sectional Center, unexplained and unanalyzed by Gilchrist, it was impossible for the district court to make a meaningful calculation of the number of nonsupervisory black employees at the Augusta Post Office whose class claims would not be barred by the statute of limitations. The burden is on the plaintiff who seeks to

certify the suit as a class action to establish the prerequisites of Fed.R.Civ.P. 23(a). *Zeidman,* 651 F.2d at 1038. Gilchrist failed, in both her motion for class certification and offer of proof, to meet her burden of showing that the purported class was so numerous that joinder of all members was impractical. Therefore, the district court's denial of class certification is affirmed.[4]

## III. PREVAILING PARTY'S COSTS

In its judgment, the district court stated that each party shall bear its own costs. Bolger moved that costs be taxed against Gilchrist, but the court ruled that Gilchrist's notice of appeal deprived it of jurisdiction over the costs issue. Bolger contends that the trial court's unexplained decision in the judgment to deny his costs was an abuse of discretion.

 Under Fed.R.Civ.P. 54(d), costs shall be allowed as of course to the prevailing party unless the court directs otherwise. "While the rule does not prevent a

hear from opposing counsel on the matters in the proffer. Gilchrist does not explain how this willingness to hear from defense counsel infested this case with reversible error. Also we fail to understand her contention that Fed.R.Evid. 103 precluded the district court from hearing from Bolger's counsel. In fact, Fed.R.Evid. 103 would not appear to apply to this action by the district court since, rather than excluding any of Gilchrist's evidence, the court allowed Gilchrist to submit all evidence on the issue of class certification. Moreover, Gilchrist has failed to cite a single case which suggests that a trial court may not expand the record on an offer of proof by permitting opposing counsel to comment. We note that in interpreting former Fed.R.Civ.P. 43(c), entitled "Record of Excluded Evidence," one court observed that a trial court may even require the other party to cross-examine the proffered testimony or to offer conflicting evidence on the offer of proof. *Christensen v. Felton,* 322 F.2d 323, 328 (9th Cir.1963).

Because Gilchrist now bases her right to class certification on the offer of proof, we think that the judge wisely permitted defense counsel to comment on the proffer in an effort to determine whether there were matters in the proffer that were uncontroverted. We fail to understand how the court's willingness to allow Gilchrist to offer any additional evidence on the class issue is controlled by Fed.R.Evid. 103(a)(2) or 103(b) and, assuming it is controlled, how

the court's attempt to determine what areas of the offer of proof were uncontested constitutes reversible error.

4. We add that the consequences of class certification in this case might well have been harmful to the potential class members. Had Gilchrist been named as class representative, the finding of no pattern and practice of discrimination at the Augusta Post Office would generally have been res judicata to all members of the class. *See Kemp v. Birmingham News Co.,* 608 F.2d 1049 (5th Cir.1979). There was, however, some evidence of a disparity in the number of blacks in top management positions at the post office. The district court observed that the Postal Service has not always sought out and obtained the best talent available within its rank. This suggests that an inappropriate class representative, such as Gilchrist, who failed to prove that her lack of promotion was due to race or sex rather than her poor attendance record and who failed to prove a pattern and practice of discrimination, might well have produced an inappropriate result for those members of the putative class that have been victims of discrimination. Good claims should not be foreclosed by a poor class representative. Thus, any adverse consequences of denying class certification may well have been outweighed by the negative res judicata effects of certifying a class action with Gilchrist as the representative.

trial court from requiring a prevailing party to bear its own costs, 'the language of the rule reasonably bears intendment that the prevailing party is prima facie entitled to costs and it is incumbent on the losing party to overcome that presumption.... [since] denial of costs ... is in the nature of a penalty for some defection on his part in the course of the litigation.'" *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir.1977) (quoting *Popeil Brothers, Inc. v. Schick Electric, Inc.*, 516 F.2d 772, 775 (7th Cir.1975)). The rule in this circuit is that where the trial court denies the prevailing party its costs, the court must give a reason for its denial of costs so that the appellate court may have some basis upon which to determine if the trial court acted within its discretionary power. *Id.* at 526–27; *see also Baez v. United States Dept. of Justice*, 684 F.2d 999, 1004 (D.C.Cir.1982) (en banc) ("Every circuit that has considered the question (ten out of twelve) has not only *recognized* the presumption [that prevailing parties will obtain costs], but has held that a court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.").

We accordingly vacate that part of the judgment directing the parties to bear their own costs and remand the question of costs to the district court for it either to grant the defendant his costs or to deny costs with a reason given for the denial. In all other respects, the judgment of the district court is affirmed.

AFFIRMED in part; VACATED and REMANDED in part with instructions for retaxing costs.