Tiffany THOMAS, et al., Plaintiffs,

v.

CLAYTON COUNTY, GEORGIA,
et al., Defendants.

No. Civ.A.1:97CV1517AJEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 17, 2000.

Torin Dana Togut, Office of Torin D. Togut, Roswell, GA, Michael Raymond Hauptman, Office of Michael R. Hauptman, Atlanta, GA, Gerald R. Weber, Robert Lo–Pei Tsai, American Civil Liberties Union of Ga. for plaintiffs.

J. Stanley Hawkins, Gary M. Sams, Laura Louise Lones, Weekes & Candler, Decatur, GA, for Ralph Matthews, Clayton County School Dist., defendants.

Robert Earl Wilson, Ellen S. Cheek, Wilson Morton & Downs, Decatur, GA, for R.G. Roberts, defendant.

Roger S. Sumrall, Hall Booth Smith & Slover, Atlanta, GA, Arnold Wright, Jr., Freeman Wright & Herman, Atlanta, GA, for Tracey Morgan, defendant.

Jack Reynolds Hancock, Brian R. Dempsey, Hancock & Echols, Forest Park, GA, for Zannie Billingslea, defendant.

Donald Ray Foster, Foster & Foster, Jonesboro, GA, John Alvin Kimbell, Fincher & Hecht, Morrow, GA, for Clayton County, GA, defendant.

Gerald R. Weber, Robert Lo–Pei Tsai, American Civil Liberties Union of Ga., Atlanta, GA, for Sergio Evans, Josh Starks.

### ORDER

CARNES, District Judge.

This case is presently before the Court on plaintiffs' Motion for Reconsideration [99], plaintiffs' Motion to Re–Open and for Injunctive Relief, Declaratory Relief and Expungement Against Clayton County and Clayton County School District [101], defendant R.G. Roberts' Motion for Consideration of Bill of Costs [122], plaintiffs' Motion for Review of the Clerk of Court's Taxation of Costs and Objections to Defendants' Bills of Costs [125], and plaintiffs' Motion to File Brief in Excess of Page Limitation [126]. The Court has reviewed the record and the arguments of the parties and, for the reasons set forth below, concludes that plaintiffs' Motion for Reconsideration [99] should be **DENIED**, plaintiffs' Motion to Re–Open and for Injunctive Relief, Declaratory Relief and Expungement Against Clayton County and Clayton County School District [101] should be **DENIED**, defendant R.G. Roberts' Motion for Consideration of Bill of Costs [122] should be **DENIED AS MOOT**, plaintiffs' Motion for Review of the Clerk of Court's Taxation of Costs and Objections to Defendants' Bills of Costs [125] should be **GRANTED**, and plaintiffs' Motion to File Brief in Excess of Page Limitation [126] should be **GRANTED.**

### BACKGROUND

A detailed rendition of the facts in this case can be found in the Court's September 30, 1999 Order [97]. In that Order, the Court granted summary judgment in favor of defendants. Plaintiffs have since moved for reconsideration of that Order. In addition, plaintiffs filed a motion to re-open the case to allow the Court to rule on the injunctive relief plaintiffs have requested in this lawsuit. On October 29, 1999, the Court re-opened the case to consider plaintiffs' motion for injunctive relief. (Order [111] at 1.) Finally, plaintiffs have filed a motion challenging the Clerk of Court's taxation of costs against plaintiffs. The Court will address each issue in turn.

### DISCUSSION

I. *Plaintiffs' Motion for Reconsideration*

In this motion for reconsideration, plaintiffs ask the Court to reconsider its ruling

that a statement made by one student[1] constituted inadmissible hearsay. First, plaintiffs argue that defendants waived their hearsay objections by failing to raise the objections in their motions for summary judgment. (Pls.' Mot. for Reconsideration [99] at 2–3.) Second, plaintiffs contend that this statement either is not hearsay or falls into several hearsay exceptions and should have been considered by the Court. (*Id.* at 3–7.) Plaintiffs conclude that if the Court had considered the student's statement, the Court would not have granted summary judgment to defendants as to plaintiffs' final decisionmaker theory of municipal liability. (*Id.* at 8.)

◼ The Court finds plaintiffs' motion for reconsideration to be without merit. The Court concludes that the school district properly objected to the hearsay evidence in their reply brief. Plaintiffs rely on *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1015 (11th Cir.1987), for the proposition that defendants waived their hearsay objections by failing to include them in their original motions for summary judgment. *Offshore Aviation* does not stand for such a proposition, however. Indeed, in that case, a panel of the Eleventh Circuit ruled that it would not consider a hearsay objection when defendant raised the objection for the first time *on appeal. Id.* In the instant case, defendants raised their objection prior to the Court's entry of summary judgment and did not spring this objection on plaintiffs at trial or on appeal. *See Epic Metals Corp. v. Souliere*, 181 F.3d 1280, 1285 (11th Cir.1999) (Eleventh Circuit would not consider hearsay objection made for first time in reply brief *on appeal* ). Accordingly, the Court concludes that plaintiffs' procedural objection is without merit.

Moreover, as the Court ruled in its initial order, the student's testimony[2] is inadmissible hearsay. (Order [97] at 67 n. 32.) Specifically, one fifth-grade student, Carl Casey, purportedly overheard a comment by Morgan allegedly recounting a prior remark that had been made by Roberts out of the presence of student Casey. According to Casey, Morgan allegedly remarked to Officer Zannie Billingslea that Assistant Principal R.G. Roberts had told Morgan that Morgan could strip search the students. Plaintiffs seek to have this alleged statement by Morgan considered as substantive evidence because, without it, plaintiffs have no other evidence to suggest that the assistant principal authorized the particularly intrusive search that was later undertaken by the teacher and the police officer. If unable to show authorization of an unconstitutional strip search, as opposed to a less intrusive constitutional search, by the only arguable policymaker or decisionmaker[3] in the case, plaintiffs have no basis for holding this entity liable

---

1. In fact, plaintiffs suggest that several students had offered testimony that involved the hearsay in question: that is, that teacher Morgan was overheard telling Officer Billingslea that Assistant Principal Roberts had told Ms. Morgan that the latter could conduct a "strip-search." In fact, as noted *infra* at 1332, only one student offered this testimony. The other twenty-one students who might have heard such a statement did not testify to this effect.

2. As defendant Clayton County School District points out, there is only one student—out of the twenty-two students present in the room that morning who submitted to depositions in this case—who actually testified that he heard Morgan tell Billingslea that Roberts had authorized a strip search. (Clayton

County School District's Resp. to Pls.' Mot. for Reconsideration [109] at 3; Carl Casey Dep. at 12–13.) The other students simply mention the term strip search and do not testify regarding the authorization given to Morgan from Roberts. (*See* F.N.Dep. at 7–8, 17; Eric Brown Dep. at 31; Joshua Starkes Dep. at 13; Tiffany Thomas Dep. at 16, 24, 67.) Indeed, one student, Tiffany Thomas, testified that she first heard the words "strip search" from her mother after the incident was completed. (Tiffany Thomas Dep. at 67.)

3. As noted in the Court's September 30, 1999 Order granting summary judgment, it is highly uncertain that the assistant principle would be deemed a policy or decisionmaker even had she authorized the strip search. Indeed,

for any illegal actions by the teacher or the officer.

Notwithstanding the arguments made in plaintiffs' motion for reconsideration, the Court continues to conclude that the statement sought to be admitted is classic hearsay.[4] Discussion of the issue is somewhat confusing because the evidence involves a statement within a statement, with both statements being made by out-of-court declarants. As noted in its previous order, this Court would have no problem allowing Morgan to testify that Roberts had told Morgan to conduct a strip search. (Order [97] at 67 n. 3).[5] Morgan, however, has not testified to the above and indeed disputes the statement attributed to her and to Roberts. Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the statement sought to be admitted is Morgan's alleged remark that assistant principal Roberts' had told Morgan to conduct a strip search of her students. As the alleged declarant, Morgan, clearly did not make the alleged statement "while testifying at a trial," the statement attributed to her is an out-of-court statement. Moreover, it is the intent of plaintiffs to offer the evidence for the sole purpose of proving the truth of the matter asserted: that Roberts had, in fact, told Morgan to conduct a strip search. Accordingly, the alleged statement is hearsay.

At bottom, the rule against hearsay is grounded, in part, in a notion that evidence must have some minimal level of reliability. To gauge reliability, the statement must typically be susceptible to being tested as to its accuracy. The testimony here by a witness that the witness had heard a second person say to a third person that a fourth person had made a particular statement obviously does not allow an opponent to test whether the fourth person actually made the given statement, in that the witness never heard the remark allegedly made by the fourth person and has no ability to be credible or uncredible as to the question whether the statement was ever actually made.

Indeed, a projection of how a trial would play out on this issue more vividly illustrates why the testimony of the student is hearsay and why this thin sliver of arguable "evidence" is insufficient to ward off defendant's otherwise meritorious motion

---

if forced to decide, this Court would conclude that the assistant principal was *not* such a final decisionmaker. As the Eleventh Circuit law on this matter is not totally consistent and as it was clear to this Court that plaintiffs offered no admissible evidence that the assistant principal had, in fact, authorized the strip search, the Court resolved this issue against plaintiffs on the basis of the absence of any evidentiary support for plaintiffs' contention. In short, for purposes of the summary judgment motions, it assumed, without deciding, that the assistant principle would be considered a final decisionmaker. (*See* Order [97] at 53–66.)

4. Plaintiffs correctly note that, in reviewing a motion for summary judgment, a court cannot make credibility assessments. That is true and the credibility of the student has not factored into the Court's analysis of the hearsay question. Having said that, the reliability

of the fifth grade student as to this matter is highly suspect. *See infra* at 1335–36. Even assuming the student's testimony to be credible, however, the student's testimony about Morgan's alleged authorization is rank hearsay.

5. The Order indicates that, if testified to by Morgan, Robert's statement would meet an exception to the hearsay rule. In fact, if testified to by Morgan, Robert's statement would not be hearsay at all, because it represents a verbal act; that is, Roberts is telling Morgan to do something. The hearsay rule presumes that the hearsay statement will contain an assertion that could either be true or false and that the proponent of the statement will be introducing it to prove its truth. *See* FED.R.EVID. 801(c). A statement directing someone else to do something, by itself, contains no assertion that could be either true or false.

for summary judgment. Specifically, were the Court to deny summary judgment, the question of fact before a jury would be whether assistant principal Roberts had authorized a strip search. Roberts would testify that she never told teacher Morgan to conduct such a search; Morgan would confirm that Roberts never gave such authorization. Likewise, another employee who was present during the conversation with Roberts and Morgan, Madricia Nettles, would confirm that she had not heard Roberts authorize a strip search. (*See* Order [97] at 66 n. 31.) The only testimony to the contrary would be the student's testimony that he heard Morgan later say to Billingslea that Roberts had authorized a strip search. This testimony could not constitute substantive evidence of any authorization by Roberts, however. At best, it would be considered as impeachment of Morgan's testimony that no such authorization was given. Yet, Rule 801(d)(1) of the Federal Rules of Evidence makes clear that a prior inconsistent statement of a declarant, even if the declarant is subject to cross-examination at trial, is still hearsay unless that prior statement was given under oath at another proceeding. Clearly, Morgan never testified under oath that Roberts gave the alleged authorization. Indeed, as Morgan denies that Roberts ever gave the authorization, there is no evidence from either of the two parties to the conversation that such authorization was ever given. The mere existence of a prior inconsistent statement by Morgan is, at best, impeachment of Morgan; impeachment of a witness as to a statement that a third party purportedly has made to that witness cannot morph into substantive evidence that the statement of that third party was ever actually made. With no substantive evidence that Roberts had authorized the strip search, the Court would be forced to grant a judgment for the defendant school board during trial: a result that the Court's ruling on the summary judgment motion has already anticipated.

■ Plaintiffs argue, however, that the statement in question constitutes an exception to the hearsay rule. Again the Court disagrees. In addition to the Rule 801(d)(1) argument, plaintiffs argue that Morgan's alleged statement regarding her conversation with Roberts constituted a present sense impression or an excited utterance, pursuant to Rule 803(1) and (2) of the Federal Rules of Evidence. The Court disagrees. Morgan's alleged summary of her earlier conversation with Roberts did not describe or explain an event "while the declarant was perceiving the event, or immediately thereafter," FED. R.EVID. 803(1), nor did the summary constitute "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event." FED.R.EVID. 803(2).

■ Plaintiffs also contend that Morgan's statement to Billingslea regarding Roberts' alleged authorization of a strip search is an admission by a party-opponent under Rule 801(d)(2) of the Federal Rules of Evidence. Typically, when an individual party has made a statement outside of court, there is no difficulty in concluding that the statement is not hearsay but, instead, should be admitted as an admission by the party. The matter becomes more complicated when the party is an entity and when the focus of the law suit is to determine which employee can properly speak for the entity on the matter in question and whether the appropriate official has in fact spoken. Here, a paramount issue in this case was whether a final decisionmaker for defendant school board had explicitly authorized a strip search; the only potential decisionmaker in this case was Assistant Principal Roberts. A witness' testimony that he had overheard another person say that Roberts had authorized a strip search in no way enables a finder of fact to conclude, one way or the other, whether Roberts

ever made the statement.[6] Particularly, is this so when the person overheard making the remark denies that she ever made such a statement and denies that Roberts ever gave the authorization. It is essential to remember that, absent a showing of explicit authorization by a decisionmaker for the specific search undertaken here, plaintiffs cannot hold the defendant Clayton County School District liable. This Court concludes that plaintiffs cannot show the requisite explicit authorization through the testimony of a student that he overheard someone say that the decisionmaker had given such authorization.

■ Finally, plaintiffs contend that the statement should fall under the residual hearsay exception, Rule 807 of the Federal Rules of Evidence. Rule 807 provides that even if a statement is not specifically covered by Rules 803 or 804, it may not be excluded as hearsay if there are circumstantial guarantees of trustworthiness and if the Court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent could procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The Court concludes that Rule 807 does not warrant admission of this testimony. First, the statement by student Casey, a plaintiff in this case who was hoping to recover money damages by prevailing in this lawsuit, is not more probative than the contradicting evidence of Madricia Nettles, who is no longer even employed by the school system, who has no financial interest in this case, and who, unlike the student, was actually present when the conversation between Roberts and Morgan occurred. (Madricia Nettles Dep. at 5.) Second, the statement lacks "equivalent guarantees of trustworthiness" and the "interests of justice" would not be best served by its admission.

Indeed, whatever the dictates of the hearsay rules, this Court would have certainly been inclined to admit the statement under this catch-all exception had the student's statement borne any indicia of reliability; it did not, however. It is rather incredible that, in the midst of all the excitement on the day of the search, a fifth-grade student would have accurately heard every word of the conversation between two adults and that, even if carefully listening, he would have later remembered hearing the words "strip search": a term that certainly would have been alien to him.

Further, as noted by this Court in its earlier Order, had Roberts actually told Morgan to conduct a strip search, one could reasonably expect that Morgan would have certainly said so, as any employee would believe that explicit authorization of a particular act by one's supervisor typically absolves the employee of blame for that act. (Order [97] at 67 n. 32.) Indeed, from the beginning, Morgan's position was adverse to Roberts. After originally submitting to the principal her written statement concerning the incident, Morgan told the principal that Roberts had wanted Morgan to write that Roberts had given specific parameters for the search; Morgan changed her statement to indicate that Roberts simply authorized a search but did not indicate how the search should be performed. This summary of the conversation by Morgan

---

6. Were Billingslea able to defend himself through an allegation that Morgan had told him that a higher-up had authorized the strip search, a trial court would admit the evidence for the purpose of explaining and possibly justifying Billingslea's subsequent behavior. The evidence would not be admitted, however, to prove the truth of the assertion that Roberts had ever made this statement.

also accorded with Ms. Nettles recollection of the conversation. (*See generally* Order [97] at 3–4, 9–10; *see also* Morgan Dep. at Exs. 1 & 2.) Even at the earliest point, then, Morgan recognized that it was important for her to explain that she had not acted without some supervisory direction. Clearly, had Roberts actually directed that Morgan or Billingslea perform a strip search, Morgan would have said so either in her statement or in her deposition testimony.

Finally, the circumstances are consistent with Morgan's testimony that Roberts had told her to search the students but had given no parameters or specific directions as to how the search should be executed. That is, after speaking with Roberts, Morgan did not begin with a strip search. Instead, she searched the students' personal belongings, desks, and shoes. (Order [97] at 4.) When that search failed to uncover the stolen money, it was Billingslea, not Morgan, who suggested that some children might be wearing a second layer of clothing, which layer could conceal the money. (*Id.*) Thus, as it was Billingslea's suggestion that led to the "strip" search, these circumstances do not create an inference that Roberts had directed Morgan to conduct a "strip" search.

Accordingly, as the Court indicated in its previous Order, there is no reliable testimony that Roberts specifically authorized a strip search. (*See* Order [97] at 67–68 & n. 32.) Arguably, Roberts can be faulted for not giving Morgan specific directions on how to conduct the search. Yet, defendant Clayton County School District cannot be liable because its decisionmaker acted negligently. Only if the decisionmaker authorized the specific unconstitutional conduct—here, a "strip" search—can the defendant school district be held liable. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (mere "scintilla of evidence" not sufficient to defeat motion for summary judgment). *See also Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1247 (11th Cir.1999) ("If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted.") Therefore, the Court **DENIES** plaintiffs' motion for reconsideration.

## II. *Plaintiffs' Motion for Injunctive and Declaratory Relief*

In this motion, plaintiffs request three specific types of declaratory and injunctive relief. First, plaintiffs request that the Court issue a declaration that the strip searches in this case were unconstitutional. (Pls.' Mot. [101] at 3.) Second, plaintiffs request that the Court expunge all student records in possession of the Clayton County School District and Police Department of any mention of the searches that occurred in this case. (*Id.* at 6.) Finally, plaintiffs ask this Court to issue an injunction to: "(1) require the development of policies and training as set out in the Court's order; and (2) prevent [Clayton County] and [Clayton County School District] from conducting strip searches where only a small amount of money is missing and there is no particularized suspicion that any particular child had the money." (*Id.* at 7.) The Court will address each type of relief in turn.

### A. *Declaratory Relief*

First, plaintiffs seek declaratory relief, stating that the searches in question in this case were unconstitutional. The Court finds that declaratory relief in this case is unnecessary, as the Court has already issued a lengthy Order discussing the unconstitutionality of the searches that occurred in the instant case. (*See* Order [97] at 18–36.) Any further declaratory relief would serve no legitimate purpose.

## B. *Expungement*

Next, plaintiffs request that the Court order the Clayton County Police Department and the Clayton County School District to expunge all of the "students' records regarding their strip searches." (Pls.' Mot. [101] at 2.) Plaintiffs claim that such relief is appropriate under the Supreme Court's holding in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). In requesting such relief, plaintiffs attempt to rid the students' records of the "taint of criminality" associated with the searches—that is, to rid the students' records of the possible perception that "a reasonable person who learns that a student was strip searched to recover stolen money will presume that the student's conduct justified a suspicion of criminal wrongdoing." (Pls.' Reply Br. [127] at 19.)

In response to plaintiffs' motion requesting expungement, the school district and the police department note that the students' records contain no mention of the strip searches. The police department asserts that it "has no records having to do with the students except for the investigation notes included in Billingslea's personnel file." (Clayton County Police Department's Resp.Br. [118] at 6.) Similarly, the school district filed the affidavit of Luvenia Jackson, the Executive Officer for Student Services for the Clayton County School District, who reviewed the school and discipline records of each of the plaintiffs in the instant case and found no records that the plaintiffs were involved in the searches. (Clayton County School District's Resp.Br. [120] at Jackson Aff. at ¶¶ 2–3.)

Although plaintiffs do not contest defendants' assertions, they argue that other documentation contains reference to these students and the searches. Specifically, plaintiffs contend that employment records, memoranda, and correspondence likely contain reference to the searches and the students involved in the searches. (Pl.'s Reply [127] at 22.) It is these documents which the plaintiffs would like the Court to order the police department and the school district to expunge.

■ Although it is clear that the Court has the power to order the expungement of records, the Court declines to do so in this case. In light of defendants' showing that no individual students' records contain references to the searches, plaintiffs cannot demonstrate that they will suffer irreparable harm if the remaining documents contain reference to them or the searches. Indeed, in their original brief, plaintiffs had contended that the presence of this incident in the students' records could negatively impact them in the Clayton County school system and in their future college applications. (Pls.' Mem.in Supp.of Mot. [101] at 5.) That can no longer be a concern. The presence of memoranda or notices in the files of certain employees within the police department or school district will not reflect on the students' academic or disciplinary records and will not harm plaintiffs in the future.

Moreover, the presence of records of this search serves to assist plaintiffs in their quest to prevent any future unconstitutional strip searches. The presence of these records will serve to notify future administrators of the past misconduct and will better enable administrators to assess training and supervisory deficiencies. In addition, the information regarding the searches in the employment records for County employees will allow the County to make disciplinary decisions with the full complement of information.

Accordingly, the Court concludes that the benefits of expungement are outweighed by the potential benefits of allowing records of the searches to exist. As such, the Court **DENIES** plaintiffs' motion for the equitable relief of expungement.

## C. *Injunctive Relief*

Finally, plaintiffs request that the Court issue an injunction containing two parts.

First, plaintiffs ask the Court to order the police department and the school district to adopt guidelines, policies, and training on the searches of students in the school setting. Second, plaintiffs seek an injunction prohibiting mass strip searches of students in the Clayton County schools by employees of either the school district or the police department for small amounts of money. Defendants, on the other hand, contend that plaintiffs do not have standing to seek injunctive relief.

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir.1994). "Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.'" *Id.* (quoting *American Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir.1992)). Indeed, "[past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.]" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

■ In the instant case, plaintiffs [7] must demonstrate that there is a realistic threat that they would be subject to an intrusive and unconstitutional strip search while in school by either school officials or police officers. To do so, plaintiffs first contend that "[p]ast constitutional violations suffered by a plaintiff, while not alone sufficient, raises a 'strong inference' of reasonable fear of future constitutional injuries." (Pls.' Reply Br.[127] at 5.) Next, plaintiffs assert that the fact that the school district and the police department have not disavowed the past unconstitutional behavior and that their policies still allow for strip searches. (*Id.* at 10.) Third, plaintiffs assert that they still attend school in Clayton County, that students continue to bring small, non-valuable items to school, and that those items frequently turn up missing. These facts, plaintiffs maintain, support their contention that they will likely be subjected to future unconstitutional strip searches. (*Id.* at 12–13.) Finally, plaintiffs argue that because they are students, a special subclass of individuals, they are more likely to fall victim to unconstitutional searches due to the fact that they are required by law to attend school and that they are incapable of conducting themselves in a manner to avoid future searches. (*Id.* at 15–16.)

Relying on *Church*, this Court will assume that plaintiffs have standing to pursue injunctive relief. Although plaintiffs may have standing, the Court is not persuaded that injunctive relief is warranted in this case. As to plaintiffs' request for an injunction prohibiting school and police officials in Clayton County from engaging in mass, suspicionless searches for small amounts of money, the Court concludes that an injunction is unwarranted. The Court observed in its summary judgment Order that it "does not foreclose the possibility that there could be circumstances under which" it would approve of a mass search of students in a public school. (Order [97] at 34.) Indeed, the Court noted that the theft of a "valuable" item would likely support the suspicionless strip search of a number of students in a public school. (*Id.* at 35.) The determination of whether an item is sufficiently valuable to warrant an intrusive search, however, must be made on a case by case basis. *See generally New Jersey v. T.L.O.*, 469

---

7. All but two of the plaintiffs are still attending Clayton County schools. (Pls.' Reply Br. [127] at 12.)

U.S. 325, 341–42, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (adopting totality of circumstances test to determine propriety of searches in the school context). As evidenced by this Court's thorough and painstaking discussion surrounding the particular searches in the instant case, however, the determination is not a simple one that can be handled in a generalized manner. Accordingly, the Court is unwilling to issue an injunction which attempts to generalize the particular facts of this case.

Plaintiffs also request an injunction commanding the school district and police department to develop particular policies and procedures for engaging in strip searches in the school setting. Once again, the Court is not persuaded that such an injunction is prudent. As discussed fully in the Order denying summary judgment, school officials are due much deference in their determination of the best means to effect order, discipline, and the well-being of the student body. (Order [97] at 55.) *See Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827–28 (11th Cir. 1997). Indeed, this Court noted, "If federal courts are unable, in advance, to set out detailed policies on school searches, it seems a bit unfair to require school districts to do much more than call for reasonableness on the part of their school administrators when the latter decide to conduct a search." (Order [97] at 55–56.) This Court will not unnecessarily step into the shoes of a school administrator to determine the parameters of school and police guidelines as they relate to future searches. *See LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir.1993) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)) (reversing district court's issuance of injunction which intruded on penal institution's discipline system for its employees because "[t]he court should have 'accorded wide-ranging deference in the adoption and execution of policies and practices that in [the prison official's] judgment are needed to preserve internal order and discipline and to maintain institutional security' ").

For the above reasons, plaintiffs' motion for injunctive and declaratory relief is **DE-NIED**.[8]

### III. *Clerk's Taxation of Costs*

Finally, plaintiffs ask the Court to vacate the Clerk's orders taxing costs against plaintiffs and order each party to bear its own costs. In the instant case, the Clerk taxed costs against plaintiffs in the amount of $37,080.51. (Pl.'s Mot. [125] at 1.) This amount includes: $5,087.30 for defendant Tracey Morgan (Bill of Costs [110] at 1); $10,326.92 for defendant Clayton County, Georgia (Bill of Costs [112] at 1); $12,137.53 for defendants Clayton County School District and Ralph Matthews (Bill of Costs [113] at 1); an additional $5,483.30 for Clayton County, Georgia (Bill of Costs [117] at 1); and $4,045.46 for defendant R.G. Roberts (Bill of Costs [123] at 1).[9]

---

**8.** As this Court noted it its original order, however, defendant school district might be well advised to develop and implement a policy that offers more guidance than the current policy.

**9.** Plaintiffs correctly point out that the bills of costs reflecting the $5,483.30 taxed in favor of Clayton County and $4,045.46 taxed in favor of R.G. Roberts were untimely filed. According to Local Rule 54.1, "[a] bill of costs must be filed by the prevailing party within thirty (30) days of the entry of judgment," and "[a] bill of costs which is not timely filed will result in the costs not being taxed as part of the judgment." N.D.Ga.L.R. 54.1. In the instant case, the Clerk entered judgment on September 30, 1999. (Judgment [98] at 1.) Clayton County filed its second bill of costs on November 5, 1999 while Roberts filed her bill of costs on November 11, 1999. (Bill of Costs [117] at 1; Bill of Costs [123] at 1.) Roberts' bill of costs was accompanied by a motion explaining that she did not file her bill of costs in a timely fashion due to the fact that her attorney was ill during the month in which the bill of costs was due. (Roberts' Mot. for Consid. of Bill of Costs [122] at 1–2.)

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides, "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" "While the rule does not prevent a trial court from requiring a prevailing party to bear its own costs, 'the language of the rule reasonably bears intendment that the prevailing party is prima facie entitled to costs and it is incumbent on the losing party to overcome that presumption.'" *Gilchrist v. Bolger,* 733 F.2d 1551, 1556–57 (11th Cir.1984) (quoting *Walters v. Roadway Express, Inc.,* 557 F.2d 521, 526 (5th Cir.1977) (quoting *Popeil Bros., Inc. v. Schick Elec., Inc.,* 516 F.2d 772, 775 (7th Cir.1975))). Indeed, the Eleventh Circuit has held, "The rule in this circuit is that where the trial court denies the prevailing party its costs, the court must give a reason for its denial of costs so that the appellate court may have some basis upon which to determine if the trial court acted within its discretionary power." *Gilchrist,* 733 F.2d at 1557. *See also Head v. Medford,* 62 F.3d 351, 354 (11th Cir.1995).

Plaintiffs contend that four factors support their contention that each party should bear its own costs. First, plaintiffs contend that they brought this claim in good faith to enforce the basic constitutional rights of their children and had a solid basis in law and fact to bring the case. (Pls.' Mot. [125] at 4.) Second, plaintiffs claim that the resolution of this case has achieved public and private benefits in that the Court's Order in this case has clarified the contours of the law with regard to school searches. (*Id.* at 4–5.) Third, plaintiffs maintain that they are unable to pay costs due to their financial condition and offer affidavits from the students' parents to support their claim of financial hardship. (*Id.* at 6; *see also id.* at Parents' Affs.) Finally, plaintiffs argue that the imposition of costs in the instant litigation would serve to deter future efforts by parents to enforce the constitutional rights of their children. (*Id.* at 9.)

 As to Plaintiffs' allegation that they have acted in good faith in pursuing this litigation, the good faith of a plaintiff who has brought a non-meritorious suit would not typically prompt this Court to refuse to tax costs against them. *See The Assoc. of Mexican–American Educators v. California,* 195 F.3d 465, 494 (9th Cir.1999) (the fact that plaintiff's arguments had merit was not a proper factor in determining whether to tax costs against losing party). Plaintiffs correctly note that some courts have found that good faith by the losing party may be a factor in determining whether to tax costs against the losing party. *See Teague v. Bakker,* 35 F.3d 978, 996 (4th Cir.1994) and *White & White, Inc. v. American Hosp. Supply Corp.,* 786 F.2d 728, 730 (6th Cir.1986). These courts have noted, however, that this factor, alone, cannot support a district court's refusal to tax costs on the losing party. *Teague,* 35 F.3d at 996 (to allow courts to rely solely on losing party's good faith to refuse to tax costs "would frustrate the rule that, in the ordinary case, a prevailing party is entitled to an award of costs"); *White & White,* 786 F.2d at 730 (good faith of losing party is "relevant but insufficient basis for denying costs"); and *Delta Air Lines, Inc. v. Colbert,* 692 F.2d 489, 490 (7th Cir.1982) ("losing party's good faith conducting the litigation is not enough").

This Court concludes that plaintiffs' good faith litigation of this case is not a particularly compelling factor in the

___

As the Court has determined that each party should be taxed its own costs, the Court does not need to determine whether the untimeliness of Clayton County and Roberts' bills of costs is fatal to their request for costs.

Court's present determination of costs. All litigants are required to litigate in good faith under the Federal Rules of Civil Procedure. *See* FED.R.CIV.P. 11. *See also AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1527 (10th Cir.1997) (quoting *National Info. Servs., Inc. v. TRW, Inc.,* 51 F.3d 1470, 1472 (9th Cir.1995)) ("All parties to a federal action have an obligation to act in good faith and with proper purpose."). As the Fourth Circuit has explained, "good faith on the part of a losing party would be a virtual prerequisite to a denial of costs in favor of the prevailing party." *Teague,* 35 F.3d at 996. Accordingly, the Court concludes that this factor does not weigh in favor of plaintiffs.

Second, this Court is also unpersuaded by plaintiffs' argument that imposition of costs would create a financial hardship on them. As to those appellate courts that have called for district courts to consider a plaintiff's financial resources before imposing *any* costs, this Court notes, respectfully, that such advice is not very helpful. That is, almost without exception, plaintiffs in § 1983 or employment cases are not wealthy people.[10] To articulate, as a factor that should be considered in a court's decision, a fact that repeats itself in every case before the court does not advance much the analysis that the court should use in making the decision. Thus, if appellate courts truly mean that trial courts should consider a plaintiff's financial resources in determining whether to award any costs,[11] then what they are really saying is that courts should never, or almost never, award costs against plaintiffs.

Yet, in adopting Rule 54 of the Federal Rules of Civil Procedure, which applies to both prevailing plaintiffs and defendants, Congress did not state that a non-prevailing plaintiff could avoid the imposition of costs if the latter might create a financial hardship. Presumably, Congress was aware that the assessment of costs against a losing party could create a financial hardship in many, if not most, cases. Nevertheless, as noted, there is a presumption that the prevailing party will receive reimbursement of its costs.[12] Indeed, in thousands of federal law suits every year in this country, defendants and plaintiffs are forced to expend substantial sums of money in attorney's fees and expenses, respectively, to defend themselves against claims that are ultimately determined to be without merit or to prosecute claims in which their position has been vindicated.[13] They

---

**10.** Further, in almost all cases, the defendants will have far greater resources than the plaintiffs, as plaintiffs' attorneys do not typically waste their or their client's time and/or financial resources on a defendant who does not have the resources to pay the sought after damages.

**11.** As the costs per plaintiff in most cases before this Court have infrequently reached or exceeded $5,000, consideration of a plaintiff's financial condition might be a more appropriate factor in those cases where the costs have substantially exceeded the above figure and where the plaintiff would suffer a *substantial* financial hardship if she had to pay the entire amount of costs. *Cf. Chapman v. AI Transport,* 180 F.3d 1244, 1253 (11th Cir.1999) ("[T]he district court does have the authority to consider the financial resources of a non-prevailing party as a factor in the amount of costs to award.").

Here, the costs, assessed individually, would total $3,090.04 per plaintiff. This amount of costs would not permanently cripple the plaintiffs, as a financial matter. Hence, the Court concludes that plaintiffs' financial condition here would not disfavor the award of costs.

**12.** "The language of the rule reasonably bears intendment that the prevailing party is prima facie entitled to costs and it is incumbent on the losing party to overcome that presumption." *Gilchrist v. Bolger,* 733 F.2d 1551, 1556–57 (11th Cir.1984) (quoting *Walters v. Roadway Express, Inc.,* 557 F.2d 521, 526 (5th Cir.1977) (quoting *Popeil Bros., Inc. v. Schick Elec., Inc.,* 516 F.2d 772, 775 (7th Cir.1975))).

**13.** Some federal statutes, such as § 1983 and federal employment discrimination statutes, do allow a prevailing plaintiff to be reimbursed for attorney's fees. Plaintiffs who do not proceed under such statutes, however, are

get no reimbursement.[14] Presumably, in rejecting the "English rule," in which a losing party is required to reimburse the prevailing party for *all* expenses, Congress was attempting to strike a compromise by requiring the losing party to pay the much lesser "costs" of litigation. The compromise would be eviscerated if a losing party could avoid paying costs merely by arguing that he could not afford to do so.

Further, the imposition of costs has a potentially greater impact than merely offering a very small partial reimbursement of the expenses incurred by the prevailing party. Instead, it is the only institutional tool available to deter some litigants from pursuing non-meritorious litigation or non-meritorious defense of litigation. For parties who represent themselves *pro se* or for plaintiffs who are represented by attorneys on a contingency fee basis, there is no financial disincentive against pursuing even the most marginal of cases or defenses. If such a party prevails on his claim, he wins money; if he loses, he loses nothing. The ability to assess costs is the only systemic method of discouraging such a party from pursuing weak cases. For all these reasons, then, the Court is not persuaded by plaintiffs' complaint that the assessment of costs would create a financial hardship for them.

■ Although neither of the above factors persuade the Court, the Court nevertheless concludes that plaintiffs should not be required to pay costs in this case, because, albeit in no way a prevailing party,[15] they have achieved a partial victory that likely could not have been obtained without their law suit. Here, plaintiffs succeeded in persuading this Court to characterize a type of search utilized by defendants as an unconstitutional search under the circumstances. While plaintiffs ultimately lost the case, because all potentially culpable defendants had viable defenses to liability, they proved that the conduct was improper. Further, their pursuit of this litigation and their success at having the Court declare it unconstitutional should likely discourage the defendants from future such conduct and should encourage defendants to ensure that searches in schools are conducted in a more careful manner in the future. Thus, while plaintiffs lost the case, to the extent that no plaintiffs won any money, they succeeded in vindicating the complaints of the students who had been subjected to the search in question. Accordingly, as plaintiffs vindicated their constitutional rights and served the public interest by maintaining their lawsuit, the Court **GRANTS** plaintiffs' motion to vacate the Clerk's taxation of costs and orders each party to the instant case to bear their own costs.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Reconsideration [99] is **DENIED,** plaintiffs' Motion to Re–Open and for Injunctive Relief, Declaratory Relief and Expungement Against Clayton County and Clayton County School District [101] is **DENIED,** defendant R.G. Roberts' Mo-

---

likewise forced to bear their own attorney's fees.

**14.** In defining costs, Rule 54(d)(1) allows for reimbursement of only a small sub-set of the expenses that a prevailing litigant would incur, and it does not include the largest item of expense usually incurred by a litigant: his attorney's fees.

**15.** Plaintiffs contend that the Court's finding that the acts of Morgan and Billingslea were

unconstitutional was a "mixed judgment" warranting the denial of costs to either party. (Pls.' Mot. [125] at 5.) The Court disagrees with plaintiffs' terminology, because in prevailing against plaintiffs in the latter's request for damages and injunctive relief, defendants obtained the judgment in this case. Nevertheless, the Court has ultimately been persuaded by the spirit of plaintiffs' arguments on this point.

tion for Consideration of Bill of Costs [122] is **DENIED AS MOOT,** plaintiffs' Motion for Review of the Clerk of Court's Taxation of Costs and Objections to Defendants' Bills of Costs [125] is **GRANTED,** and plaintiffs' Motion to File Brief in Excess of Page Limitation [126] is **GRANTED.**