**Colin BOWE, Plaintiff,**

v.

**PUBLIC STORAGE, Defendant.**

Case No.: 1:14–cv–21559–UU

United States District Court,
S.D. Florida.

Signed 04/29/2015

Alec Huff Schultz, Andrew Benjamin Boese, James Robert Bryan, Scott Brian Cosgrove, Leon Cosgrove LLC, Coral Gables, FL, Brett Elliott Von Borke, David Buckner, Seth Eric Miles, Buckner + Miles, Miami, FL, for Plaintiff.

Anjali Srinivasan, David J. Silbert, Erin E. Meyer, John Keker, Michelle Ybarra, Paven Malhotra, Quyen Ta, Steven A. Hirsch, Kecker & Van Nest, LLP, San Francisco, CA, David Paul Ackerman, Elio Raul Novoa, Jr., Kristen Lee McKeever, Scott Jeffrey Link, Ackerman Link & Sartory, West Palm Beach, FL, for Defendant.

## ORDER

URSULA UNGARO, UNITED STATES DISTRICT JUDGE

THIS CAUSE is before the Court on Plaintiff's Motion for Class Certification. D.E. 127. This Motion is fully briefed and ripe for disposition.

THE COURT has considered the Motion and the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons set forth below, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Defendant Public Storage is a Maryland real estate investment trust that "acquire[s], develop[s], own[s], and operate[s] self-storage facilities which offer storage spaces for

lease on a month-to-month basis, for personal and business use." D.E. 163–6 at 3. In its Form 10–K submitted to the U.S. Securities and Exchange Commission, Public Storage states it is the "largest owner and operator of self-storage facilities in the United States" and that it has "direct and indirect equity interests in 2,200 self-storage facilities" that are "located in 38 states within the U.S. operating under the 'Public Storage' brand name." *Id.*

In 2006, Public Storage began requiring its tenants to have insurance covering the goods stored at its facilities. D.E. 138–22 ¶ 3. The Insurance Addenda attached to customers' lease agreements require tenants to acknowledge that they must maintain insurance that covers loss or damage for the personal property stored at Public Storage facilities. D.E. 163–7 at 2. The Insurance Addenda further state that the specific Public Storage facility where the lease agreement is completed, and that facility's employees, are not authorized or qualified to evaluate the adequacy of insurance that a tenant may have and that a tenant's homeowners' insurance policy or other source may already provide coverage. *Id.* The Insurance Addenda are standard forms that are largely identical across all states, except for state-specific language at the bottom of the Addenda that outlines the penalties in each state for filing a false insurance application. D.E. 163–8; D.E. 163–2 at 8–9, 61:19–62:4.

The Insurance Addenda includes a section entitled "Application for Insurance," which allows tenants to "elect" insurance coverage through Willis Insurance Services of California[1]. D.E. 163–7 at 2. As described in the Addenda, the insurance is underwritten by New Hampshire Insurance Company ("NHIC"). *Id.* The Addenda further states that lessees are authorizing Public Storage to "conduct the administrative function of receiving the premium to send to the insurance company" on the tenant's behalf and that any questions regarding the storage insurance program should be directed to Willis Insurance. *Id.* Originally, the Willis Storage Insur-

ance Program offered the following four levels of coverage: (1) $2,000 of coverage for $9 per month; (2) $3,000 of coverage for $14 per month; (3) $4,000 of coverage for $19 per month; and (4) $5,000 of coverage for $24 per month. Presently, coverage is offered at three levels: (1) $3,000 of coverage for $11 per month; (2) $4,000 of coverage for $13 per month; and (3) $5,000 of coverage for $15 per month. D.E. 163–9. Most tenants purchase the lowest premium and lowest coverage option. D.E. 163–2 at 22, 90:1–8. Plaintiff Brian Morgan's account receipt for the storage unit he rented in February 2013 reflects that the insurance premium is billed as a separate charge. D.E. 79–6 at 4.

The tenant insurance program offered by Public Storage (referred to as "PSTIP") has been very successful. Based on a transfer pricing report completed by accounting firm Ernst & Young, "more than 80% of new tenants elected to purchase insurance through the PSTIP" in 2012. D.E. 127–1 at 3. The report explains that tenants have an incentive to purchase insurance through the program "because of the combined effect of the contractual requirement that they obtain insurance, the modest premium (currently $8 to $24 a month) under the PSTIP, and the simplicity and convenience of obtaining a policy while renting." *Id.*; Ex. 31 to Haga Decl. at PS000157039–40, D.E. 138–53.

Public Storage provides materials to the property managers at its facilities regarding how employees should introduce the PSTIP to customers to ensure that it is presented "in a consistent way." D.E. 163–17 at 2. One of these documents is a "standard storage insurance presentation" to be used with "every new customer." D.E. 163–16 at 2. The way in which the PSTIP is presented and described to customers is the same throughout the country. D.E. 163–15 at 7, 202:15–17.

During the existence of the PSTIP, Public Storage has collected the premiums for the program and has remitted those payments to either Willis Insurance or Marsh, depending on the servicer at the time. D.E. 163–3 at 3; D.E. 138–22 ¶ 12. The policy premiums are

---

1. From December 2013 to December 2014, Marsh U.S. Consumer replaced Willis Insurance as the insurance broker and program administra- tor for the tenant insurance program. D.E. 138–22 ¶ 5.

then remitted to PS Insurance Company–Hawaii, Ltd. ("PS Hawaii"), a subsidiary of Public Storage, less the administrative costs. D.E. 163–3 at 3. PS Hawaii reinsures 100% of the risk insured by NHIC up to either $1 million or $5 million per occurrence. *Id.*; D.E. 138–22 ¶ 6. PS Hawaii then pays an access fee to Public Storage for "providing exclusive access to market storage insurance to Public Storage's customer base." D.E. 138–22 ¶ 14; D.E. 163–3 at 3. Capri Haga, the President and sole employee of PS Hawaii, declares that the access fee is based on arms-length negotiations between PS Hawaii and Public Storage, and financial analyses performed by Ernst & Young. D.E. 138–22 ¶¶ 13, 14.

Plaintiffs allege that this "access fee" constitutes a kickback that allows Public Storage to "generate massive amounts of revenue with huge profit margins" at the expense of its customers. D.E. 79 ¶ 8. According to Plaintiffs, Public Storage purposefully masks its relationship with NHIC from customers and "fails to disclose that it keeps an overwhelming majority of the premium that it purportedly sends to the insurance company in the form of a kickback from the insurance broker and underwriter." *Id.* ¶¶ 9, 10. "In short, Public Storage has engaged in a pattern of unconscionable profiteering, deceit, and self-dealing with regard to the self-storage insurance policies it promotes and sells its customers." *Id.* ¶ 11.

In their Amended Complaint, Plaintiffs alleges the following eight counts: (I) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (II) breach of contract; (III) unjust enrichment; (IV) breach of contract and breach of covenant of good faith and fair dealing; (V) unconscionability; (VI) violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a); (VII) violation of RICO Act, 18 U.S.C. § 1962(c); and (VIII) violation of RICO Act, 18 U.S.C. § 1962(d). Plaintiffs

now move to certify the following national class for the purpose of their RICO claims:

> All persons who rented storage units from Public Storage within the United States and who purchased self-storage insurance policies through Public Storage within the applicable limitations period (the "Class Period").
>
> Excluded from this class are Public Storage, its affiliates, subsidiaries, agents, board members, directors officers, and/or employees.

D.E. 163 at 4. Plaintiffs also ask the Court to certify a Florida subclass for the non-RICO counts, including breach of contract and the breach of the duty of good faith and fair dealing, unconscionability, unjust enrichment, and violation of FDUTPA. Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3). Plaintiffs move that Brian Morgan [2] be appointed representative of the Class, and for the appointment of Grossman Roth, P.A. and Leon Cosgrove, LLC, as Class Counsel.

## STANDARD OF REVIEW

A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been satisfied. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). A plaintiff seeking class certification carries the burden of proof, *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000), and must "affirmatively demonstrate" that all of the requirements of Rule 23 are met, *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011).

Rule 23(a) contains an implicit, threshold requirement that the proposed class be "adequately defined and clearly ascertainable." *See, e.g.*, *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 659 (M.D. Fla. 2001) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.")).[3] Rule

---

**2.** Although Plaintiffs are only seeking Brian Morgan be appointed class representative, Colin Bowe and Brian Morgan together filed their Motion for Class Certification, and titled it "Plaintiffs' Motion for Class Certification." Accordingly, the Court refers to "Plaintiffs" throughout this Order.

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh

23(a) further contains four explicit prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These four prerequisites are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003). Additionally, a court may only certify a class action if at least one of the three alternative requirements of Rule 23(b) has been met. *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that the Court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

 In determining whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). "Although a court should not determine the merits of a case at the class certification stage, the court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug*, 350 F.3d at 1188 n.15; *see also Hudson v. Delta Air Lines*, 90 F.3d 451, 457 (11th Cir. 1996) (stating it is sometimes necessary to probe behind the pleadings before coming to rest on the certification question).

## DISCUSSION

 Before this Court can address whether Plaintiffs have satisfied the requirements of Rules 23(a) and 23(b)(3), the Court must first address Rule 23's implied requirement that the proposed class is "adequately defined and clearly ascertainable." *See Little v.*

Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down

*T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

As stated above, Plaintiffs seek to certify the following class:

> All persons who rented storage units from Public Storage within the United States and who purchased self-storage insurance policies through Public Storage within the applicable limitations period (the "Class Period").

> Excluded from this class are Public Storage, its affiliates, subsidiaries, agents, board members, directors officers, and/or employees.

D.E. 163 at 4. Plaintiffs also seek certification of a Florida subclass.

The parties do not dispute that this is an adequately defined and clearly ascertainable class. Based on evidence submitted to the Court, it seems that the parties can easily determine the individuals who have rented storage units from Public Storage and participated in the PSTIP based on Public Storage's business records. Plaintiffs attach an exhibit to their Motion demonstrating Public Storage's ability to identify its customers who have purchased storage insurance through PSTIP. Ex. 30 to Pls' Mot., D.E. 127-3 at 84–87. The only issue with the class definition is that the "applicable limitations period" is undefined. Accordingly, if the Court finds that the other requirements of Rule 23(a) and 23(b)(3) are met, then the Court will define the appropriate limitations period so that class members can be easily identified.

## I. Rule 23(a)

### A. Numerosity

 The numerosity requirement under Rule 23(a) is easily satisfied here, which Public Storage does not dispute. Although there is no fixed numerical standard, generally more than forty potential class members satisfies numerosity. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Public Storage operates 2,200 storage

prior to October 1, 1981.

centers in 38 states, including 250 facilities in Florida. D.E. 163–6. At least 759,000 certificates of insurance have been issued through its PSTIP, and more than 80% of new tenants elect to participate in this program. *Id.*; D.E. 127–1 at 3. As such, the numerosity requirement is met. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (finding it was not an abuse of discretion to hold that 31 class members satisfied numerosity).

### B. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc.*, 131 S.Ct. at 2551. "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted). For purposes of Rule 23(a)(2), "even a single common question will do." *Id.* at 2556.

According to Plaintiffs, there are at least nine common issues in this case:

- Whether Public Storage engaged in a deceptive and unfair business practice by concealing from the Class its financial interest in its self-storage insurance;

- Whether the representations made and insurance premiums collected by Public Storage would lead a reasonable consumer to believe it was a pass-through charge;

- Whether Public Storage receives undisclosed kickbacks from its self-storage insurance;

- Whether Public Storage manipulated the Class through the sale of insurance products in order to maximize its own profits;

- Whether and to what extent the Defendant's conduct injured Plaintiff and the Class members;

- Whether Public Storage breached its contract with the Class members, and violated the implied covenant of good faith and fair dealing, by keeping kickbacks provided by its insurers, while representing in the rental agreement that it would not insure the property of the members of the Class;

- Whether Public Storage unlawfully enriched itself at the expense of the Class;

- Whether Public Storage engaged in a racketeering enterprise; and

- Whether Public Storage's conduct is unconscionable.

Public Storage, in a heading in its Response, states that "Commonality and Predominance are lacking here for many reasons." D.E. 138 at 10. The argument that follows, however, is solely focused on whether common issues predominate under Rule 23(b)(3), and thus Defendant appears to have collapsed the two analyses. *See Vega v. T–Mobile, USA, Inc.*, 564 F.3d 1256, 1268–69 (11th Cir. 2009) (finding that the "district court improperly conflated the commonality determination with a review of predominancy" by assessing "whether issues that are subject to generalized inquiry, and thus applicable to the class as a whole, predominate over issues that are amenable only to individualized inquiry").

The proposed national class through which Plaintiffs seek to resolve their RICO claims would require determining whether Public Storage participated in a racketeering enterprise as alleged in the Amended Complaint. D.E. 79 ¶¶ 113, 130. This is a common question identified by Plaintiffs that is capable of classwide resolution as it is based on the business relationships between Public Storage and the related insurance entities. As to the proposed Florida subclass, determining whether Public Storage engaged in a deceptive or unfair business practice under FDUTPA by allegedly concealing its financial interest in the PSTIP is a common issue capable of classwide resolution as Public Storage operated its PSTIP and transferred insurance premiums acquired pursuant to the

PSTIP in the same manner across the entire class. Therefore, Plaintiffs have satisfied the commonality requirement with respect to the proposed class and subclass because there is at least one common question applicable to each class.

### C. Typicality

Rule 23(a)(3) mandates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The claims of the class representative need not be identical to those of the individual class members; rather, "there need only exist a sufficient nexus between the legal claims of the named class representative and those individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (internal quotations and citations omitted). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Furthermore, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Vega*, 564 F.3d at 1275 (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008)). Lastly, the presence of substantial factual differences does not negate a finding that the typicality requirement has been met so long as "there is a strong similarity of legal theories." *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1259 (11th Cir. 2014) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009)).

Public Storage argues that Morgan's claims are not typical because he lacks standing to assert any statutory or common law claim arising outside of Florida, and because he cannot prove causation or damages for any of his claims. Public Storage's first argument is based on a misunderstanding of Plaintiffs' Motion. Plaintiffs are not trying to certify a national class for the common law claims asserted in their Amended Complaint,

such as breach of contract. Plaintiffs' common law claims arise out of Florida law and will be resolved via the Florida subclass. Therefore, there is no standing issue as Morgan has standing to assert the claims to be resolved by the proposed national class, the RICO claims, and, apart from Plaintiffs' unconscionability claim discussed below, Morgan has standing to assert the Florida common law and statutory claims to be resolved by the proposed Florida subclass.

Public Storage's second argument is that Morgan's claims are markedly different from other members of the proposed class because: (1) Morgan admitted that he was not deceived by Public Storage's conduct and thought Public Storage was the insurer when he elected to participate in the PSTIP; (2) Morgan also admitted that it would be speculation to say whether he would have declined to participate in PSTIP if Public Storage had disclosed their financial interest in the program; and (3) Morgan is an insurance salesman by trade who does not disclose the gross or net profits on insurance policies he sells to his own customers. Plaintiffs reply that Public Storage misstates Morgan's testimony and that, even assuming Public Storage's recitation of Morgan's testimony is correct, Morgan still satisfies the typicality requirement.

The excerpts of Morgan's deposition testimony on which Public Storage relies have been taken out of context and mischaracterized by Public Storage. Plaintiffs' legal theory is, generally, that it was unlawful for Public Storage to not disclose its financial interest in PSTIP to its customers while aggressively marketing PSTIP, and that customers were injured by paying excessive premiums for PSTIP insurance. The factual nuances of Morgan's testimony at which Public Storage grasps are of no import. Morgan testified that he initially thought that Public Storage was the insurer for his storage unit, but he then thought a third party was the insurer when he "read the actual insurance contract." D.E. 138–3 at 13, 47:9–10. This is in line with Plaintiffs' claims, which are that the relevant contracts and insurance policies do not disclose Public Storage's financial interest in the PSTIP. The other two excerpts of Morgan's deposition testimony that Public

Storage hails as defeating typicality are entirely irrelevant to Plaintiffs' claims and legal theories. Plaintiffs' theory is not that class members would have elected not to participate in the PSTIP had Public Storage disclosed its financial interest in the program; Morgan testified, he could not speculate what others would have done. Further, it is irrelevant whether the insurance companies for whom Morgan works, who are not at all affiliated with the parties to this lawsuit, disclose their net profits to customers.

 Morgan, like the other members of the proposed class, leased storage from Public Storage and elected to purchase insurance through the PSTIP. D.E. 79 ¶¶ 48–53. He testified that he was unaware of Public Storage's financial interest in the PSTIP until a few months before October, 2014, when his attorneys informed him of the alleged kickbacks. D.E. 138–3 at 8, 15:16–20. During his tenancy, Public Storage profited from Morgan's insurance premiums and did not disclose this arrangement. These are substantially similar facts that would give rise to the other class members' claims, and demonstrate the nexus between Morgan's claims and the claims of the proposed classes. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996). Accordingly, Morgan satisfies the typicality requirement for the national class members' RICO claims, and the Florida subclass members' FDUTPA, breach of contract, and unjust enrichment claims.

 Morgan, however, does not have standing to assert Plaintiffs' unconscionability claim or seek injunctive relief. The equitable theory of unconscionability does not allow Plaintiffs to recover money damages. *Williams v. Wells Fargo Bank N.A.*, No. 11–21233–CIV, 2011 WL 4368980, at *8 (S.D. Fla. Sept. 19, 2011); *see Cowin Equipment Co. v. Gen. Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984) ("[T]he equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages."). Morgan no longer rents self-storage space from Public Storage. D.E. 163–11 at 3. Accordingly, Morgan lacks standing to seek injunctive relief because there is no evidence that he suffers any real and immediate threat of future harm from Public Storage's alleged scheme. *See McCullum v. Orlando Regional Healthcare Sys., Inc.*, 768 F.3d 1135, 1146 (11th Cir. 2014). Plaintiffs readily admit to this fact in responding to Public Storage's motion for summary judgment. D.E. 253 at 21. They argue that Bowe still has standing to pursue injunctive relief, and they can move to have another class member step forward as lead plaintiff on their injunctive relief claims once they are certified. Plaintiffs did not move to appoint Bowe as the class representative, and therefore Morgan must have standing to pursue this relief in order to certify Plaintiffs' unconscionability claim. *See Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class."). As Morgan does not have standing to pursue injunctive relief, he fails the typicality requirement for Plaintiffs' unconscionability claim, and it will therefore not be certified for class treatment.

### D. Adequacy

 Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy of representation analysis requires the Court to address two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189 (quoting *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460–61 (N.D. Ala. 2003)). The adequacy requirement also asks whether plaintiff's counsel are "qualified, experienced and generally able to conduct the proposed litigation." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

 Only a fundamental conflict of interest that relates to the specific issues in controversy will defeat a party's claim to class certification. *Valley Drug Co.*, 350 F.3d at 1189. For example, a fundamental conflict of interest exists "where some [class] members claim to have been harmed by the same

conduct that benefitted other members of the class." *Id.* Furthermore, if the economic interests and objectives of the named representatives differ significantly from the economic interests and objectives of the unnamed class members, class certification should be denied. *Id.* at 1190.

Public Storage argues that Morgan and his counsel are inadequate because "they have tried to proceed, in the face of significant standing issues and other legal defects with their nationwide claims, without asserting claims under the consumer protection laws in 37 of the 38 states at issue here." D.E. 138 at 27. Public Storage further contends that strategically deciding to pursue national RICO claims that have "more exacting elements" could result in waiver of claims or prejudice to other class members, which constitutes a conflict of interest between Morgan and his counsel, and members of the class. *Id.* In response, Plaintiffs argue that the decision to pursue a federal RICO claim through a national class will not prejudice absent class members from bringing other claims in separate litigation.

 Members of a class are bound by the res judicata effect of a judgment in a class action. *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007) (finding previous class action settlement barred plaintiffs' claims); *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 672 (S.D. Fla. 2009). "Application of res judicata prevents the splitting of a single cause of action and the use of several grounds for recovery under the same action as the basis for separate suits"; this is called claim splitting. *Kelecseny*, 262 F.R.D. at 672. "Claim preclusion applies 'not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'" *Adams*, 493 F.3d at 1289 (quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992)).

 Conflict between a class representative and the proposed class that would defeat adequacy can exist where a class representative abandons certain claims and thereby precludes absent class members from recovery on those claims in a subsequent action.

*See In re Teflon Prods. Liability Litig.*, 254 F.R.D. 354, 367 (S.D. Iowa 2008) (finding possible preclusive effects of class action rendered class representatives inadequate where the had abandoned claims). The res judicata effects of a judgment cannot be determined prospectively and can only be determined in a subsequent action. Fed. R. Civ. P. 23 Advisory Committee's Notes to the 1996 Amendments.

Although the parties did not expend a significant effort briefing this issue, the Court is troubled by the potentially preclusive effects that a judgment on a nationwide RICO class could potentially have with respect to claims based on state laws in states outside of Florida. As recognized by Plaintiffs in their proposed amended complaint, the factual allegations forming the basis of their claims also give rise to claims under other state statutes designed to combat consumer fraud and deceptive business practices. D.E. 58-1 at 21–22, 44–46 (bringing claims under the Illinois Consumer Fraud and Deceptive Business Practices Act and the California Consumer Legal Remedies Act). Every state has a statute prohibiting unfair and deceptive acts and practices, and the protections range from broadly prohibiting deceptive conduct to specifically prohibiting a set list of deceptive tactics. *See* Carolyn L. Carter, *Consumer Protection in the States: A 50–State Report on Unfair and Deceptive Acts and Practices Statutes* (Feb. 2009), *available at* https://www.nclc.org/images/pdf/car_sales/UDAP_Report_Feb09.pdf. They also vary in a number of other ways, including the level of protection, the remedies available to consumers, and whether they permit class actions. *Id.* at 7–10. Absent class members may have claims against Public Storage under these various statutes, and the Court does not want to prevent these class members from bringing such claims in other cases. Similarly, absent class members in other states may have their own common law claims, including breach of contract and unjust enrichment, which Plaintiffs raise here for the Florida subclass.

Plaintiffs argue that their decision to pursue a federal RICO claim in this lawsuit does not preclude class members from bringing

such claims in separate litigation. Plaintiffs rely on the Eleventh Circuit's decision in *Borrero v. United Healthcare of New York*, 610 F.3d 1296 (11th Cir. 2010), to argue that the "Eleventh Circuit squarely rejected" Public Storage's argument that such claims would be barred. D.E. 154 at 14.

The plaintiffs in *Borrero* were members of a global class certified in a previous lawsuit referred to as the *Shane* litigation. *See Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) (affirming order certifying RICO class), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). In the *Shane* litigation, the Eleventh Circuit affirmed certification of the class's RICO claims, but the court reversed class certification of the class's contract-based claims. Subsequently, the district court granted summary judgment against class members on their RICO claims, finding that they failed to produce sufficient evidence of a RICO conspiracy. *See In re Managed Care Litig.*, 430 F.Supp.2d 1336 (S.D. Fla. 2006). The plaintiffs in *Borrero* brought breach of contract claims based on the same underlying conduct against the same defendants named in the *Shane* litigation. *Borrero*, 610 F.3d at 1309 ("United points out that the factual allegations in the RICO suit and the factual allegations in the suits now on appeal are substantially similar, and some of the allegations appear almost verbatim in both complaints."). The district court dismissed the *Borrero* plaintiffs' claims pursuant to res judicata based on the judgment against the RICO class in the *Shane* litigation. *Id.* at 1301.

The Eleventh Circuit reversed the district court's dismissal because the Eleventh Circuit had previously found that evidence regarding the class's RICO claims was only "tangentially relevant" to the class members' breach of contract claims, despite being based on similar allegations. *Id.* at 1310 ("In consideration of our prior decision in *Klay*, where we relied heavily on the differences between the RICO claims and contract-based claims brought against United in approving only the RICO claims for class certification, we conclude that those differences still exist

sufficiently to prevent the application of res judicata to the claims presented here."). The court recognized, however, that this holding would potentially create judicial inefficiencies, and that other circuits might not reach a similar conclusion. *Id.* The court noted that other circuits had adopted the transactional approach for determining res judicata, which means that "the claim extinguished includes all rights of the plaintiff to remedies against the defendant *with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.*" *Id.* at 1308 (quoting Restatement (Second) of Judgments § 24(1) (1982)) (emphasis added). Accordingly, although *Borrero* does support Plaintiffs' position, its holding was reached, in large part, to give effect to prior Eleventh Circuit rulings, and the *same decision may not have been reached by other circuits.* Therefore, the Court is not entirely persuaded by Plaintiffs' argument that absent class members outside the Eleventh Circuit would not be precluded from bringing other related claims in separate litigation.

Ultimately, despite the Court's misgivings, Morgan's inability as a resident of Florida to pursue state law claims arising in other states does not amount to a fundamental conflict that would defeat adequacy. Other courts have held that the doctrine against claim splitting does not apply to class actions. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 431–32 (4th Cir. 2003) ("But a class action, 'of course, is one of the recognized exceptions to the rule against claim-splitting.'" (quoting 18 *Moore's Federal Practice* § 131.40[3][e][iii] (2002))); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009). As *Moore's Federal Practice* notes, this is because only certain claims may be appropriate and certified for class treatment:

Generally, the request for certification as a class action and the order approving such certification will determine the nature of the claims subject to class action treatment, and the resultant judgment will be limited to those claims. Thus, a class action can be thought of as an action in a court of limited jurisdiction in which only certain claims and certain forms of relief are available. This type of action, of course, is one

of the recognized exceptions to the rule against claim-splitting.

18 *Moore's Federal Practice* § 131.40[3][e][iii] (2015).

Along a similar vein, courts have also found that where claims are not suitable for class treatment, they are not actually litigated and therefore will not be subsequently barred by res judicata. *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 307 (N.D. Ohio 2009) ("An absent class member whose claim was not suitable for class treatment and, therefore, not litigated in the class action proceeding, may bring an individual lawsuit asserting that claim."); *Newberg on Class Actions* § 16:22 (2014) ("In some cases, certain claims are not suitable for class treatment, and thus absent class members have no opportunity to litigate those issues. A class member may be permitted to bring an individual suit subsequent to a class action in which he or she participated when the individual claim asserted was not previously litigated.").

Where courts have found that a class representative is adequate, despite abandoning certain claims or theories and thereby subjecting absent class members to preclusive effects, the courts have emphasized that the abandoned claim was not suitable for class treatment, and that the remaining claims adequately protect the class members' interests. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 670 (D. Kan. 2004) (finding class representative adequate where plaintiff abandoned uncertifiable fraud claim, which "advance[d] the named plaintiffs' interests as well as the interests of the absent class members"); *Stanich*, 259 F.R.D. at 308 ("Here, the only thing that has been abandoned is one *theory* for satisfying the duty element of the fraudulent concealment claim. Thus, the potential conflict in this case is less significant than the abandonment of an independent fraud claim in *In re Universal Serv. Fund.*" (emphasis in original)).

Conversely, courts have found proposed representatives inadequate where they had strategically abandoned or did not have standing to bring substantial and meaningful claims that many absent class members could potentially bring and prevail upon. *See Faust v. Comcast Cable Commc'ns Mgmt.*, No. WMN–10–2336, 2014 WL 3534008, at *10 (D. Md. July 15, 2014) (finding named plaintiffs' abandonment of claims for unpaid lunch breaks and post-shift work, which could be asserted by a number of potential class members and entitle them to more damages, undermined the named plaintiffs' adequacy); *Clark v. Experian Info. Solutions, Inc.*, No. 8:00–1217–24, 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001) ("Plaintiffs' efforts to limit their relief to only statutory damages in this case, may, in fact, jeopardize the remaining class members' rights to seek alternative grounds of relief in a subsequent case."); *In re Stec Inc. Sec. Litig.*, No. 09–01304–JVS, 2012 WL 6965372, at *7 (C.D. Cal. Mar. 7, 2012) ("In this case, the proposed Class Representatives are inadequate because they seek to certify a Class that includes individuals who may have claims under the Securities Act, but the Class Representatives do not have standing to bring those claims.").

■ Here, Morgan does not have standing to bring claims arising under other states' consumer protection statutes, which absent class members may be able to assert. These claims, however, would not be appropriate for national class certification because there are many variations between each state's consumer protection laws. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011) ("[T]he consumer-protection laws of the potential class members' home States will govern their claims … in view of plaintiffs' appropriate concession that the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving this dispute."). As noted above, the protection offered under these statutes varies greatly, and a number of barriers exist in other states to prevent lawsuits brought by consumers. *See Consumer Protection in the States* at 3 (listing the various ways that states prevent lawsuits under consumer protection statutes); *In re Prempro*, 230 F.R.D. 555, 564 (E.D. Ark. 2005) ("Both consumer fraud and unfair competition laws of the states differ with regard to the defendant's state of mind, type

of prohibited conduct, proof of injury-in-fact, available remedies, and reliance, just to name a few differences."). Similarly, potential common law claims would also be unsuitable for national class treatment. *See Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 735 (S.D. Fla. 2007) ("Second, as noted above, contract law is not the same in Florida as in every other state, due to the material breach requirement. Various other states require only a breach, so a putative class member would be prejudiced by applying Florida law to her claim, as she would have to prove more than that required under the law of her own state."); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state.").

Morgan has not, therefore, sacrificed stronger consumer protection claims for a much weaker RICO claim in order to strategically tailor his claims for class certification. *See In re Universal Serv. Fund*, 219 F.R.D. at 670. In pursuing a claim that is appropriate for national class certification, Morgan's interests, and his counsel's, remain aligned with the interests of potential class members.

■ Having found that the proposed class representative and proposed class counsel do not have a fundamental conflict with the proposed class that would render them inadequate, the Court must also determine "whether the representatives will adequately prosecute the action." *Valley Drug*, 350 F.3d at 1189. The Court has reviewed the biographies of the lawyers representing Plaintiff in this matter, including their experience and expertise in class actions. D.E. 163–31. Based upon this review, the Court is satisfied that Morgan's counsel, including David M. Buckner, Seth Miles, and Brett E. Von Borke of Grossman Roth, and Andrew B. Boese, James R. Bryan, Scott B. Cosgrove, David Karp, and Alec Schultz of Leon Cosgrove, are qualified, experienced, and able to prosecute this action. The Court also finds that Jared Kessler of Leon Cosgrove should no longer be a listed attorney for Plaintiffs as he is no longer with the firm.

After a careful analysis the Court finds that the Plaintiffs have satisfied the numer-osity, commonality, typicality and adequacy prerequisites found in Fed. R. Civ. P. 23(a) for their RICO, FDUTPA, breach of contract, and unjust enrichment claims. Plaintiffs have failed to satisfy the typicality requirement for their unconscionability claim because Morgan does not have standing to pursue injunctive relief.

## II. Rule 23(b)(3)

In addition to establishing the elements of Rule 23(a), Plaintiff also must satisfy at least one of the conditions of Rule 23(b). *Klay*, 382 F.3d at 1250–51. Rule 23(b)(3) requires a plaintiff to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy."

### A. Predominance

■ Determining whether common questions of law or fact predominate over questions affecting only individual members is a more demanding inquiry then Rule 23(a)'s commonality determination. *Vega*, 564 F.3d at 1270. It requires a showing that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (internal quotations marks and citation omitted). The Eleventh Circuit has further explained that "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Vega*, 564 F.3d at 1270 (internal quotation marks and citation omitted). According to another Eleventh Circuit ruling:

Common issues of fact and law predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to ... monetary relief ... [C]ommon issues will not predominate over individual questions if, "as a practical matter,

the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues."

*Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (citations omitted).

 The Eleventh Circuit has adopted the following test for evaluating predominance:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3).... [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered. Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Vega*, 564 F.3d at 1270(quoting *Klay*, 382 F.3d at 1255).

 "In order to determine whether common questions predominate, we are called upon to examine the cause of action asserted in the complaint on behalf of the putative class." *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (internal quotations and citations omitted). The Court will therefore address the predominance determination for each alleged cause of action separately.

**4.** It appears that this entity should actually be Marsh U.S. Consumer, the insurance broker and

### i. RICO claims

Plaintiffs move to certify their claims arising under RICO, 18 U.S.C. §§ 1962(a), 1962(c), and 1962(d), for nationwide class treatment. "Sections 1962(a), (b), and (c) of title 18 make criminally liable those who engage in, or aid and abet another to engage in, a pattern of racketeering activity if they also do the following: invest income derived from the pattern of racketeering activity in the operation of an enterprise engaged in interstate commerce (section 1962(a)); ... or conduct, or participate in the conduct of, the affairs of such an enterprise through a pattern of racketeering activity (section 1962(c))." *Pelletier v. Zweifel*, 921 F.2d 1465, 1495–96 (11th Cir. 1991), *abrogated on other grounds by Bridge*, 553 U.S. 639, 128 S.Ct. 2131. "Section 1962(d) makes it a crime to conspire to violate sections 1962(a), (b), or (c)." *Id.* Section 1964 of title 18 allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to bring a lawsuit against the person or entity that violated Section 1962.

 To prove a RICO claim, Plaintiffs will ultimately bear the burden of establishing the following three elements: "first, that the defendant committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant's racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014).

Plaintiffs' RICO claims are based on the following scheme. Plaintiffs allege that Public Storage was engaged in a RICO enterprise with NHIC, Willis, Perfect Solutions Storage Insurance [4], and PS–Hawaii. D.E. 79 ¶¶ 112, 130. Plaintiffs allege that Public Storage retains "an overwhelming majority of the insurance premium paid by the Plaintiffs and the Class members" through a series of transfers between these entities. *Id.* ¶¶ 113, 131. The RICO enterprise existed to "increase and maximize the revenues of Public Storage by requiring the Plaintiffs and the members of

program administrator for the PSTIP that succeeded Willis.

the Class to pay for self-storage insurance through a scheme that manipulated the premiums to cover kickbacks paid to Public Storage." *Id.* ¶¶ 114, 132. Public Storage allegedly engaged in a number of predicate acts by concealing the kickback scheme, and representing to Plaintiffs and class members that it would pass the insurance premium to the independent insurer through its standard form rental agreements, insurance addenda, account receipts, and invoices, which were communicated to Plaintiffs and class members via mail and wire facilities. *Id.* ¶¶ 118, 119, 120, 121, 137, 138, 139. These materials deceived Plaintiffs and class members by "intentionally fostering the mistaken impression that the insurance premiums paid by the Plaintiffs and the Class members for the insurance policy was the cost of the policy, when in fact the premium also included a large kickback to Public Storage." *Id.* ¶¶ 121, 139. Plaintiffs and class members were therefore injured by Public Storage's conduct because they were duped into paying inflated insurance premiums. *Id.* ¶¶ 122, 140.

The parties do not dispute that the first two elements of Plaintiffs' RICO claims would be subject to classwide proof. The alleged predicate acts will be shown by introducing Public Storage's communication of its form rental agreements, standard insurance addenda, invoices, and its "standard storage insurance presentation," and the representations contained within these materials. The alleged injuries will be shown by comparing the insurance premiums charged to class members to insurance premiums charged for other self-storage insurance policies, and by introducing evidence of the portion of the premiums that is ultimately transferred back to Public Storage.

Public Storage argues that the third element, that its racketeering activity proximately caused the alleged injuries, is not subject to classwide proof and therefore defeats the predominance requirement under Rule 23(b)(3). Public Storage contends that "[i]t is not obvious from Public Storage's contracts, nor have Plaintiffs offered any evidence, that it was important to anyone (let alone class members) that Public Storage *not profit* from the insurance." D.E. 138 at 11

(emphasis in original). In support thereof, Public Storage submits an expert report compiled by Stephen M. Nowlis, Ph.D., in which he summarizes the results of a survey he administered. Nowlis opines that:

> [T]he vast majority of consumers who purchase insurance under the Perfect Solution Storage Insurance Program would not alter their purchase decision if they were provided with the 'Portion of Premium' disclosure that, 'A corporate affiliate of Public Storage acts as a reinsurer for the Storage Insurance Program, and Public Storage will benefit by receiving a portion of the premiums.'

D.E. 138–71 ¶ 11. Public Storage also relies on a report by Jerry Hausman, an economics professor at Massachusetts Institute of Technology, in which he opines that "[c]onsumers do not find the insurance charges (or the access fee) to be an important economic factor in their choice of a self-storage provider." D.E. 138–83 at 7. Public Storage argues that "every single class member, by definition agreed to the price of the product and suffered no other purported 'damage' or 'harm.' Thus … *the mere purchase of insurance under* the TIP cannot serve as common proof of causation." D.E. 138 at 12.

Plaintiffs respond that (1) after the Supreme Court's decision in *Bridge v. Phoenix Bond & Indemnity*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008), they are not required to show reliance on Public Storage's misrepresentations and omissions to show a RICO violation; and (2) they can establish causation by inference based on classwide proof that class members actually overpaid for the self-storage insurance premiums based on the standard written materials distributed by Public Storage. D.E. 154 at 5–7.

In *Bridge*, the Supreme Court found that "no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud." 553 U.S. at 649, 128 S.Ct. 2131. "Moreover, a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." *Id.* The Supreme Court did note, however, that a plaintiff will often have

to establish that someone relied on a defendant's misrepresentations to establish causation, but that this does not make reliance an element of a RICO claim. *Id.* at 658–59, 128 S.Ct. 2131. Also, it may be the case that a plaintiff will advance a causation theory that necessarily requires showing first-party reliance on a defendant's misrepresentations. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 n.6 (2d Cir. 2013) (finding alleged scheme where defendant mailed its customers phony invoices to inflate prices above what customers were contractually obligated to pay required showing reliance on these invoices to establish that customers were injured by being forced to pay higher prices).

In cases where reliance is a necessary component of a plaintiff's theory of causation, class certification may be appropriate where evidence of reliance is subject to classwide proof and does not require individualized inquiries. *See Klay*, 382 F.3d at 1258–59. Causation is often subject to classwide proof where the defendant is accused of making a standard misrepresentation and the plaintiff can establish a reasonable inference of reliance or causation based on class members' behavior. This typically arises where the defendant is accused of making misrepresentations in financial transactions and plaintiffs can establish reliance based on their payment or their acceptance of payment. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1090–93 (10th Cir. 2014) ("Cases involving financial transactions, such as this one, are the paradigmatic examples of how the inference operates as an evidentiary matter."). For example, the courts in *Klay, In re U.S. Foodservice*, and *CGC Holding Co.* addressed and discussed RICO claims that were suitable for class certification based on the common evidence of class members' reliance and causation.

In *Klay*, plaintiff physicians alleged that the defendant health maintenance organizations (HMOs) misrepresented that they would pay plaintiffs and class members for medically necessary services and procedures according to the codes that the physicians submitted to the HMOs, but that the HMOs instead developed claims systems designed to systematically underpay the physicians. 382 F.3d at 1247–48. The HMOs concealed this underpayment by sending explanation of benefits (EOB) forms to the physicians that explained the amount of their reimbursements, but did not disclose the various ways in which the physicians' payment requests were manipulated and underpaid. *Id.* Class members would then rely on the representations in the EOB forms and accept payment. *Id.* The Eleventh Circuit affirmed certification of a global class to pursue federal RICO claims, and found that "based on the nature of the misrepresentations at issue, the circumstantial evidence that can be used to show reliance is common to the whole class." *Id.* at 1259. The standard misrepresentations were communicated to plaintiffs via the EOB forms that claimed the HMOs had "actually paid the plaintiffs the proper amounts," especially based on the HMOs prior representations that they would fully reimburse the plaintiffs. *Id.* Plaintiffs could therefore prove reliance through common evidence of the defendants' previous representations, the various EOB forms sent to plaintiffs representing they were being appropriately compensated, and plaintiffs acceptance of the payment. *Id.*

Similarly, in cases involving over-billing, courts have found that there may be classwide proof of reliance based on "the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed." *In re U.S. Foodservice Inc., Pricing Litig.*, 729 F.3d at 120 (finding predominance where alleged RICO scheme constituted mailing phony invoices to customers that included inflated prices above what customers were contractually obligated to pay and customers implicitly relied on the representations in the invoices in paying the full amount listed); *see also CGC Holding Co., LLC*, 773 F.3d at 1090–93 (finding predominance where customers paid an up-front fee in exchange for a loan commitment based on the misrepresentation that defendants would be able or intended to secure the promised loan).

Plaintiffs argue that they can similarly establish RICO causation based on classwide proof. Specifically, "by demonstrating that (1) Class members entered into agreements with Public Storage to purchase insurance that did not disclose that sizable kickbacks would be included in the cost of the insurance premium, and (2) they paid inflated insurance premiums because of the kickbacks." D.E. 154 at 8. The Court agrees.

■ Here, causation can be reasonably inferred from a showing that class members actually paid the insurance premiums that were billed as a separate item on class members' account receipts. Implicit in the account receipts, and in Public Storage's statements in class members' insurance addenda and form rental agreements, is the representation that class members are being charged a separate and reasonable insurance premium for a separate service, and that the premiums are being transmitted to a separate entity. Inferentially, class members relied on these representations in actually paying the inflated insurance premiums. Thus, causation can be established on a classwide basis and does not require individualized proof. *See CGC Holding Co.*, 773 F.3d at 1090–91 ("[N]umerous district court decisions, in the process of certifying classes, have accentuated facts similar to those in this case—primarily ... the fact that all plaintiffs paid fees in exchange for a promise—as proper grounds to infer reliance on a classwide basis.").

Public Storage's argument that the mere purchase of TIP insurance cannot establish causation because every class member agreed to the price or did not care about the amount of the insurance premium is unavailing. Plaintiffs' position is that class members paid the TIP premium based on the misrepresentation that the money was being charged for a separate service, but that the TIP premium was actually an overpriced premium that helped Public Storage increase its revenue. Public Storage's argument goes to the merits of Plaintiffs' case, but does not establish why individualized inquiries would defeat class certification.

The Court further notes that the cases finding that RICO causation cannot be proven on a class-wide basis on which Defendant relies are inapposite to the situation presented here. In *Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Insurance Co.*, 319 F.3d 205 (5th Cir. 2003), the Fifth Circuit reversed an order certifying a national RICO class alleging that defendants had fraudulently overcharged class members for retrospectively-rated workers' compensation insurance policies. Plaintiff contended that defendants were charging class members higher rates for their insurance policies then the rates mandated by the respective states. *Id.* at 212. Plaintiff's causation theory, which the district court found could be established on a classwide basis, was that class members paid inflated invoices that "affirmatively misrepresented that the premium charged was the amount lawfully due." *Id.* at 220. The Fifth Circuit reversed this determination based on evidence presented by the defendants that potential class members separately negotiated their insurance rates, and that some class members were aware that the charged rates were in excess of state-allowed rates. *Id.* Therefore because the "trier of fact must ultimately decide whether a specific policyholder thought an invoice complied with the approved rate and paid an inflated premium in reliance on that belief," an individualized inquiry was required and the plaintiff had not shown predominance. *Id.*

Here, Public Storage has not presented similar evidence that class members individually negotiated their premiums, or were aware that the charged insurance premiums included a profit to be transmitted to Public Storage. Instead, Public Storage admits that their "agreements with customers are essentially silent (or at best) ambiguous regarding whether Public Storage profits from or receives a portion of the TIP premiums." D.E. 138 at 11.

In *Poulos v. Caesars World, Inc.*, casino and cruise ship patrons brought RICO claims alleging that gaming machine manufacturers and casino and cruise ship operators deceived patrons by misrepresenting the odds of winning on electronic gaming machines. 379 F.3d 654 (9th Cir. 2004). The Ninth Circuit affirmed the denial of plaintiffs' class certification motion, finding that gambling transactions were unique and that there "may be no

single, logical explanation for gambling—it may be an addiction, a form of escape, a casual endeavor, a hobby, a risk-taking money venture, or scores of other things." *Id.* at 668; *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008) (finding that class of people who purchased light cigarettes could not be certified because "each plaintiff in this case could have elected to purchase light cigarettes for any number of reasons, including a preference for the taste and a feeling that smoking Lights was 'cool' "); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sale Practices Litig.*, 277 F.R.D. 586, 603–04 (S.D. Cal. 2011) (finding class certification inappropriate where class of investors included borrowers who entered into loans for a variety of reasons, such as to make a profit, or in expectation of increased income, or to purchase other investments). Here, Public Storage argues that "where the alleged misconduct is one of numerous possible factors motivating the purchase transaction" then causation cannot be inferred even where there are uniform business transactions. D.E. 138 at 13.

The payment of insurance premiums for the PSTIP is not like the situations in *Poulos, McLaughlin,* or *In re Countrywide.* There are not a variety of explanations as to why class members pay this premium. As the transfer pricing report from Ernst & Young states "[t]he availability and convenience of the PSTIP, especially when coupled with the contractual requirement (beginning in August 2006) that all new tenants have insurance coverage is, no doubt, a powerful inducement to tenants." Ex. 1 to Pls.' Mot., D.E. 127–1 at 4, PS000157042. Hausman's report supports the premise that there are a number of factors and reasons why class members may initially rent storage space from Public Storage, but it does not refute the evidence showing that class members elect to participate in the PSTIP for the same reason: they are required to maintain insurance on their self-storage space and Public Storage represents that the PSTIP premium is a reasonable premium for a separate service.

Therefore, as in *In re U.S. Foodservice, CGC Holding,* and *Klay,* Plaintiffs can establish an inference of causation based on classwide evidence that the same representations or omissions were made to each class member via standard materials, and that the class members relied on these omissions in paying what they believed to be a reasonable insurance premium.

### ii. FDUTPA claims

Plaintiffs also seek certification of a Florida subclass for their FDUTPA claims, and other Florida common law claims. Plaintiffs allege that Public Storage's conduct as described above violated FDUTPA, Fla. Stat. §§ 501.201, 501.211.

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A consumer's claim "for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006). Public Storage does not dispute that the alleged deceptive act and the class members' damages can be established using classwide proof. Public Storage made the same representations to its customers via a standard presentation, and had the same text in its contracts and insurance addenda; therefore the allegedly deceptive acts are the same as to each class member. Plaintiffs allege that the damages are the inflated insurance premiums that were transmitted back to Public Storage, which can also be established on a class wide basis from Public Storage's own documents.

The parties' dispute centers around whether causation can be established on a classwide basis. Plaintiffs contend that causation under FDUTPA can be established on a classwide basis because Plaintiffs do not need to establish causation on an individual basis, and can instead show causation by establishing that a reasonable person would have relied on the representations. *See Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699, 702–03 (Fla. Dist. Ct. App. 2000). Public Storage argues that causation requires examining the knowledge and understanding of each cus-

tomer and therefore requires individualized proof. *See Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229–30 (S.D. Fla. 2002).

The Florida Supreme Court has not yet addressed this point, and there is conflicting caselaw to support each party's position. As noted in *In re Sears*, Florida appellate courts have, at times, required plaintiffs to present individualized proof that each plaintiff relied on defendant's misrepresentations to satisfy FDUTPA's causation element. *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL–1703, 2012 WL 1015806, at *9 (N.D. Ill. Mar. 22, 2012). However, at least one of the cases cited in *In re Sears* has been quashed by the Florida Supreme Court based on its holding in a separate case where it found that class certification was proper where a "common course of conduct and routine billing practice" supported an alleged statutory violation. *See Tire Kingdom, Inc. v. Dishkin*, 81 So.3d 437 (Fla. Dist. Ct. App. 2011) (finding class certification was inappropriate for FDUTPA claim), *quashed by Soper v. Tire Kingdom, Inc.*, 124 So.3d 804 (Fla. 2013) (citing *Sosa v. Safeway Premium Fin. Co.*, 73 So.3d 91, 118 (Fla. 2011)).

The Eleventh Circuit has held that plaintiffs do not need to present evidence that each potential class member was actually harmed by a defendant's conduct, and that plaintiffs need only show that a reasonable consumer would have been harmed by defendant's conduct, an inquiry that lends itself more easily to class certification especially where, as here, defendant's conduct is the same as to all class members. *See Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) ("This standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." (internal citations and quotations omitted)); *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282–83 (11th Cir. 2011) (agreeing with the district court that "whether that allegedly deceptive conduct would deceive an objective reasonable consumer is a common issue for all the putative class members, amenable to classwide proof"); *Nelson v. Mead Johnson Nutrition*

*Co.*, 270 F.R.D. 689, 697 (S.D. Fla. 2010) (certifying class action because "the predominate issues in this case are (1) whether it is true that Enfamil® LIPIL® contains something that other brands of infant formula do not; and (2) whether Defendant's representations about Enfamil® LIPIL® would deceive an objective reasonable consumer").

The correct inquiry here based on Eleventh Circuit precedent, is whether Public Storage's misrepresentations were "likely to deceive a consumer acting reasonably in the same circumstances," an inquiry that does not require a showing of each class members' individualized reliance. *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed.Appx. 565, 567 (11th Cir. 2009); *see also Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1451 (11th Cir. 1991) (stating that circuit precedent controls over issues of state law unless an intervening state court case specifically contradicts it). Nonetheless, even if the Court were to use Public Storage's proposed causation test, Plaintiffs' FDUTPA claim can be resolved on a classwide basis for the same reasons as noted above with regards to Plaintiffs' RICO claims. The same alleged misrepresentations and omissions were made in the same manner to every class member. The class members all participated in the PSTIP with the same knowledge and based on the same representations. Therefore, determining whether Public Storage's allegedly deceptive acts caused class members' injuries can be based on classwide proof.

Cases finding that individualized inquiries were required to determine causation under FDUTPA, and therefore defeated predominance, arose in situations where different representations were made to different class members, and where some class members were aware of the deceptive conduct. *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 695–96 (S.D. Fla. 2014) ("The matter is further complicated by the fact that the majority of Defendant's products did not bear the challenged labelling and that the class includes products which did not contain the alleged misrepresentation during the entire class period."); *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 685 (S.D. Fla.

2008) (finding where some class members were aware of additional fees included in invoice, predominance could not be established; *Miami Auto. Retail, Inc. v. Baldwin*, 97 So.3d 846, 856 (Fla. Dist. Ct. App. 2012) (finding plaintiff had not set forth evidence that each class member received the same misrepresentation). This case does not present such individualized concerns, and therefore common issues predominate over individualized inquiries with respect to Plaintiffs' FDUTPA claims.

### iii. Breach of Contract and Duty of Good Faith and Fair Dealing

Plaintiffs seek certification of a Florida subclass for their breach of contract and breach of the duty of good faith and fair dealing claim. Plaintiffs allege that Public Storage breached the term of its standard form rental agreement that states Public Storage conducts the "administrative function of receiving the premium to send to the insurance company on [customer's] behalf." Public Storage allegedly breached its contract by "1) failing to pass through to the disclosed insurer the entirety of the insurance premium paid by Class members and instead retain[ing] an overwhelming majority of the insurance premium for its own use; and 2) taking for itself as a kickback the overwhelming majority of what it represented in the contract to be the monthly 'premium' for insurance." D.E. 79 ¶ 91.

■ The elements of a breach of contract claim under Florida law are "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. Dist. Ct. App. 2008). Plaintiffs contend that common issues predominate over individualized inquiries for this claim because all class members have materially identical rental contracts and certificates of insurance with Public Storage. Therefore, if Public Storage's receipt of a kickback from the TIP is deemed a breach of the form rental agreement and the certificate of insurance, then it would be a breach as to the whole class.

Public Storage argues that Morgan does not have a valid breach of contract claim because he actually received the insurance he paid for under the TIP and therefore does not have standing to assert a breach of contract claim on behalf of others. Public Storage further argues that Morgan cannot establish causation and damages with classwide proof. In other words, Public Storage attacks the merits of Plaintiffs' breach of contract claim, and fails to show how the breach of contract claim is not suitable for classwide treatment

■ Simply stated, this case presents the quintessential contract claim for classwide treatment. "It is the form contract, executed under like conditions by all class members, that best facilitates class treatment." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Serv.*, Inc., 601 F.3d 1159, 1171 (11th Cir. 2010); *see also Allapattah Serv., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260–61 (11th Cir. 2003) (affirming class certification for breach of contract claim where the contracts were materially similar and defendant had acted the same with respect to the entire class); *Kleiner v. First Nat'l Bank of Atl.*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) (collecting cases where "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such").

■ Indisputably, Public Storage entered into the same form rental contract, which attached the same insurance addendum, with all class members and issued the same certificate of insurance to class members. And, clearly, Plaintiffs claim that the contracts were all breached in the same manner. Thus, determining whether or not Public Storage did breach the contracts, and whether or not class members are entitled to damages as the result of any breach, can be established based on the same evidence that pertains to the entire class. As Plaintiffs have established predominance with respect to this claim, there is no impediment to class certification for its resolution.

### iv. Unjust Enrichment

■ Plaintiffs also seek certification of their unjust enrichment claim for the Florida subclass. "In Florida, the essential elements

of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Vega*, 564 F.3d at 1274.

Plaintiffs' unjust enrichment claim alleges that class members conferred a benefit on Public Storage through their payment for storage insurance, and that Public Storage consciously accepted and retained this benefit via the profits it obtained through the kickback scheme, and that retention of these profits is inequitable because it was obtained through false and misleading representations. D.E. 79 ¶¶ 95–98. Plaintiffs argue that evidence establishing their unjust enrichment claim will be the same for the entire class because Public Storage's business operations are the same to all members of the putative class. Public Storage contends that Plaintiffs are incorrect and relies on an Eleventh Circuit case stating that "this Court has noted that 'common questions will rarely, if ever, predominate' in an unjust enrichment claim." *Webber v. Esquire Deposition Serv.*, LLC, 439 Fed.Appx. 849, 851 (11th Cir. 2011). Public Storage does not, however, point to the factual issues in this case that would require an individualized inquiry into Plaintiffs' unjust enrichment claim.

■■■ As repeatedly explained in the above sections, Public Storage's conduct regarding the PSTIP was the same with respect to every class member. Determining whether this conduct unjustly enriched Public Storage will depend on the standard insurance presentation that Public Storage employees gave, the form agreements class members entered into, the certificates of insurance Public Storage issued, class members' payment of PSTIP insurance premiums, and the alleged inequity of Public Storage's kickback scheme. Other courts in this district commonly certify claims of unjust enrichment for class treatment in cases like this one where defendant acted in the same manner toward every class member. *See Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 521 (S.D. Fla. 2013) ("Defendants' business operations are the same to all

members of the putative class."); *In re Account Overdraft Litig.*, 286 F.R.D. 645, 656 (S.D. Fla. 2012) ("Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner."). Accordingly, Plaintiffs have shown that common evidence predominates over individual inquiries for their unjust enrichment claim.

### B. Superiority

■■■ The focus of the superiority analysis is on the advantages of the class action mechanism over various other forms of litigation available to the class members. *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1183–84. Furthermore, the superiority analysis does not call for an assessment of whether a class action will create significant management problems; rather, the inquiry is whether a class action will create more management problems than any of the alternative forms of litigation. *Mohawk Industries, Inc.*, 568 F.3d at 1358.

■■■ The Eleventh Circuit has found that there are four factors courts should take into account in making a superiority determination:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]

(D) the difficulties likely to be encountered in the management of a class action.

*Klay*, 382 F.3d at 1269. A finding that common issues predominate "has a tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability." *Sacred Heart*

*Health Sys., Inc.*, 601 F.3d at 1184 (internal quotation marks and citations omitted).

 Public Storage does not dispute that Plaintiffs have met the first three factors. The damages for each class member would be small, given that most class members paid only $9 per month in insurance premiums. The class members therefore do not have a significant interest in individually controlling their separate actions. Apart from the California class action raising claims under California's Unfair Competition Law, Public Storage does not dispute that there is no litigation pending against it that is similar to this lawsuit. And finally, Public Storage does not dispute that it would be desirable to concentrate litigation of the asserted claims in this forum, as the Court is familiar with the issues raised by the parties

Public Storage argues that Plaintiffs have failed to show how this action is manageable as a class action. The Court's findings that common issues predominate here, it follows that a class action will likely be more manageable than and superior to several individual actions addressing Plaintiffs' claims. Discovery in this case has closed and the parties have already submitted their pretrial stipulation, which outlines the parties' trial plan. Therefore, the Court finds that Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3).

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(3). Accordingly, it is

ORDERED AND ADJUDGED that the Motion, D.E. 127, is GRANTED IN PART as follows:

1. The Court hereby certifies the following nationwide class for resolution of Plaintiffs' RICO claims:

All persons who rented storage units from Public Storage within the United States and who purchased self-storage insurance policies through Public Storage after October 28, 2010.[5]

Excluded from this class are Public Storage, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

2. The Court hereby certifies the following Florida subclass for resolution of Plaintiffs' breach of contract claims:

All persons who rented storage units from Public Storage within the state of Florida and who purchased self-storage insurance policies through Public Storage after April 30, 2009.[6]

Excluded from this class are Public Storage, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

3. The Court hereby certifies the following Florida subclass for resolution of Plaintiffs' FDUTPA and unjust enrichment claims:

All persons who rented storage units from Public Storage within the state of Florida and who purchased self-storage insurance policies through Public Storage after April 30, 2010.[7]

Excluded from this class are Public Storage, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

4. The Court hereby appoints Brian Morgan as class representative and David M. Buckner, Seth Miles, and Brett E. Von Borke of the law firm Grossman Roth, and Andrew B. Boese, James R. Bryan, Scott B. Cosgrove, David Karp, and Alec Schultz of the law firm Leon Cosgrove as class counsel.

---

5. The statute of limitations for civil RICO actions is four years, and begins to run when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be a part of a pattern of racketeering. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013).

6. The statute of limitations for breach of contract based on a written contract is five years. Fla. Stat. § 95.11(2)(b).

7. The statute of limitations for these claims is four years. Fla. Stat. § 95.11(3).

5. Jared Kessler, Esq. is TERMINATED as attorney of record in this action.